Filed 8/31/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| GRISELDA CASTRO et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF THOUSAND OAKS, <br><br> Defendant and Respondent. | 2d Civil No. B258649 <br> (Super. Ct. No. 56-2013-00432039-CU-PA-VTA) <br> (Ventura County) |

In an action for dangerous condition of public property, approval of an actual plan or design is required to establish the affirmative defense of government design immunity. (Gov. Code § 830.6. "[T]he public entity is immune from liability if placement of the object [here, a pedestrian signal beacon] was part of a plan or design which the entity reasonably gave its discretionary approval. [Citations.]" (*Cordova v. City of Los Angeles* (2015 ___ Cal.4th ___, ___ [2015 DJDAR 9267, ___].) "Add-ons," which are not part of the approved plan or design and which are installed after the public works project is approved, do not come under the umbrella of design immunity. That is the case here. In addition, there are material triable issues of fact that a crosswalk /street intersection was a dangerous condition of public property. (Gov. Code § 835.) We reverse the grant of summary judgment.

*Facts and Procedural History*

On the afternoon of May 22, 2012, Griselda Castro, her two children Diana and Yazmin, and two other children in her care, Alyson Brito and Emily Brito

were walking in the crosswalk at the intersection of Live Oak Street and Thousand Oaks Boulevard in Thousand Oaks. Castro pressed the button to activate the pedestrian warning beacon before crossing Thousand Oaks Boulevard and saw a vehicle stop in the westbound number two lane. Pushing a baby stroller, Castro and the children started to cross the street and were struck in the number one lane by a GMC Safari van. The driver did not see the warning beacon or appellants. Castro and the children flew into the air on impact, came to rest in the roadway, and sustained personal injuries.

City's moving papers on the motion for summary judgment show that the crosswalk allows pedestrians to cross Thousand Oaks Boulevard in a north/south direction. Thousand Oaks Boulevard is a four lane street with two eastbound lanes, two westbound lanes, and a center turn lane. Vehicle traffic on Live Oak Street is controlled only by a stop sign where it intersects Thousand Oaks Boulevard in a "T" configuration.

Between 2010 and 2011, safety improvements were made to the intersection/crosswalk as part of a City approved Street Rehabilitation Project. The project plans, which were prepared by Willdan Engineering, called for the following improvements which were implemented: (1) "pedestrian ahead" warning signage on sidewalks posts in advance of the crosswalk; (2) a "PED XING" legend on the pavement; (3) regulating triangular yield lines painted on the street pavement, with "yield here" signage in front of a painted "triple four" crosswalk design with reflective markers; and (4) a yellow pedestrian sign with downward arrow at the crosswalk. A pedestrian warning beacon was listed in the project plans but removed from the plans when the City Council approved the Street Rehabilitation Project. Thus, there was no Council approval of the warning beacon.

After the project was completed in 2011, City Engineer, Jay Spurgin, authorized Traffic Engineering Division Manager John Helliwell to purchase and install the pedestrian warning beacon.

*Summary Judgment*

City claimed that the City Engineer had discretionary authority to approve the beacon warning design and that the complaint was barred by the design immunity provisions of section 830.6.

Appellants opposed the summary judgment motion on the theory that the warning beacon was not part of the approved project design. Appellants also claimed there were triable facts that the intersection/crosswalk was a dangerous condition. Appellant's highway and traffic expert, Edward Ruzak, declared that the intersection/crosswalk was dangerous due to the volume of vehicular and pedestrian traffic, high traffic speed, road width and parking lanes, adjacent commercial driveways, roadway visual distractions, an obscured crosswalk warning sign, the length of the crosswalk, and the sub-optimal beacon warning.

The trial court ruled that the action was barred by the design immunity statute and that the warning beacon "represents an additional safety feature for the crosswalk. That does not reduce the safety of the plan or design. Rather it increases the safety of the intersection design. To make the City liable for adding extra safety features, . . . defies logic and reasonable application of the design immunity."

*Design Immunity*

We review the order granting summary judgment de novo. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) Section 835, subdivision (b) provides that a public entity is liable for injury proximately caused by the dangerous condition of its property if the dangerous condition created a reasonably foreseeable risk of the kind of injury sustained, and the public entity had actual or constructive notice of the condition a sufficient time before the injury to have taken preventative measures. (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 68.)

A public entity may avoid liability by raising the affirmative defense of design immunity. (§ 830.6; *Cornette v. Department of Transportation, supra,* 26 Cal.4th at 69.) Section 830.6 provides in pertinent part: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design

3

of a construction of, or improvement to public property *where such plan or design has been approved in advance of the construction or improvement* by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved . . . ."  (Italics added.)  In order to establish design immunity,  City must show:  (1) a causal relationship between the plan or design and the accident, (2) discretionary approval of the plan or design before the construction or improvement, and (3) substantial evidence supporting the reasonableness of the plan or design.  (*Cornette v. Department of Transportation, supra,* 26 Cal.4th at p. 69.)  The first two elements, causation and discretionary approval of the design, are resolved as issues of law if the facts are undisputed.  (*Alvis v. County of Ventura* (2009) 178 Cal.App.4th 536, 550.)

City argues that the City Engineer had discretionary authority to approve the warning beacon addition .  Thousand Oaks City Municipal Code section 4.3.203, entitled "**City Engineer Authority**," provides, in pertinent part "(b)  The City Engineer shall place and maintain, or cause to be placed and maintained, all other traffic control devices where, in the opinion of the City Engineer, such official control devices are necessary to protect the public safety."  Appellants contend that the City Engineer's discretionary authority to "place and maintain" traffic control devices does not include the authority to "approve" a traffic control plan or design within the meaning of California design immunity jurisprudence.  We agree with appellants.

The moving papers state that the City Engineer authorized Traffic Engineering Manager John Helliwell to purchase the warning beacon and issue a work order for its installation.  But no warning beacon plan or design was "approved in advance of the construction or improvement. . . "  (§ 830.6.)  The trial court recognized this problem and ordered the parties to brief the issue of whether the City Engineer had "the discretionary authority to approve the round beacon?  If he did, where did that authority come from?  Based on what legal source?"  City identified no legal source other than Thousand Oaks City Municipal Code section 4-3-203 (b).

4

Former City Engineer Jay Spurgin, now Director of Public Works, declared that he "researched the issue" and determined that the City Engineer was vested with the discretionary authority "to determine, design, plan and direct the placement of traffic control signals including pedestrian beacons. . . ." That does not change California law. Section 4-3.203(b) of the City of Thousand Oaks Municipal Court vests the City Engineer with the authority to "place and maintain, or cause to be placed and maintained" traffic control devices the City Engineer believes are necessary to protect public safety. It does not expressly grant the City Engineer discretionary authority to "approve" the plan or design for a traffic control device.

In a second declaration, Spurgin states: "If an expenditure is within [a department's] financial discretion, it can be approved of within a department and does not need to go before the City Council. Flashing beacons, such as the flashing beacon in place on May 22, 2012, its recommendation, design, and usage, were within Mr. Helliwell's authority as Traffic Engineering Division Manager." Former Traffic Engineering Division Manager John Helliwell declared that he was authorized to order the warning beacon without City Council approval because the expenditure was under the necessary minimum for approval. Once again, this is a legal issue, not a public works issue. Design immunity is not conferred if the proposed construction addition is below a certain dollar limit.

In *Martinez v. County of Ventura* (2014) 225 Cal.App.4th 364, 373, we held that the focus of discretional authority to approve a plan or design is fixed by law and will not be implied. "[T]he public entity claiming design immunity must prove that the person or entity who made the decision is vested with the authority to do so. Recognizing 'implied' discretionary approval would vitiate this requirement and provide public entities with a blanket release from liability that finds no support in section 830.6"

The same principle applies here. The City Engineer's authority to purchase and install traffic control devices does not establish design immunity, i.e., the discretionary authority to approve a warning beacon design before the equipment is

5

installed.  Nor does the purchase and installation of the warning beacon as a safety addition feature create an implied design immunity.  (*Martinez v. County of Ventura, supra,* 225 Cal.App.4th at pp. 372-373.)

City's reliance on its municipal code for design immunity, if credited, would erase years of California jurisprudence.  Like the trial court, we appreciate that City was trying to add a safety feature to prevent accidents.  Were we to credit City's theory, every governmental entity would draft a similar code section and this would create design immunity by municipal code section.  All that would be required would be a declaration by an engineer approving his or her own safety idea.  To us, this seems a stretch which tears the legal fabric. There still must be an actual plan or design, i.e. something other than an oral "after the fact" statement that: "I had authority and I approved my own safety idea."

*Dangerous Condition of Public Property*

Summary judgment was granted on the alternate ground that there were no material triable facts that the roadway or crosswalk was a dangerous condition.  A public entity is not liable for minor or trivial property defects that do not create a substantial risk of injury when the property is used with due care.  (§ 830.2.)  The trial court ruled:  "Drivers and pedestrians are expected to use the due care required by the particular condition of the road and traffic.  More specifically, drivers are required to yield to pedestrians in marked crosswalks, no matter what."  We agree with the trial court's remarks.  Nevertheless, City cannot expose a pedestrian to an increased risk of harm.

In *Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, our Supreme Court held that a  public entity may be liable for a dangerous condition of public property even when the immediate cause of a plaintiff's injury is a third party's negligent or illegal act (such as a motorist's negligent driving), if some physical characteristic of the property exposes its users to increased danger from third party negligence or criminality.  (*Id.*, at p. 152.)  Public entity liability lies under section 835 when some feature of the property increased or intensified the danger to

6

users from third party conduct.  (*Id.*, at p. 155.)  The existence of a dangerous condition is ordinarily a question of fact but can be decided as a matter of law if reasonable minds can come to only one conclusion.  (*Id.*, at p.148.)   Section 835 does not require the plaintiff to show that the allegedly dangerous condition caused the third party conduct (here the motorist's failure to stop for pedestrians) that precipitated the accident.  *Cordova v. City of Los Angeles* (2015) ___ Cal.4th ___ (Filed 8/15/2015) SL0208130).)

The complaint alleges that the roadway and crosswalk created "an immediate hazard, a trap, and a deceptive and dangerous condition to pedestrians who could reasonably and foreseeably be anticipated to walk across this thoroughfare while using due care."  City's moving papers show that the crosswalk met or exceeded applicable traffic engineering standard,  but there are material triable facts on whether the warning beacon, in combination with other roadway/crosswalk factors created a dangerous condition for pedestrians using the crosswalk.  (See e.g., *Garcia v. City of San Jose*  (1967) 248 Cal.App.2d 798, 803-804 [lack of better illumination and warning signs created pedestrian trap].)

Although Thousand Oaks Boulevard is a straight and level road, the City traffic surveyor reported "unusual conditions" due to limited sight distance for vehicles exiting driveways, heavy traffic volume, and pedestrian crossings at random intervals. The crosswalk traverses a wide 80 foot street in a commercial area with high traffic volume (more than 24,000 vehicles a day) and an average vehicle speed of 37 miles per hour.  Appellants' traffic expert calculated that it would take the average pedestrian 20 seconds to cross the street and require the pedestrian to look for vehicles far down the street.

A witness reported that Castro activated the warning beacon, looked straight ahead, and guided the children into the crosswalk.  That is consistent with appellants' claim that the crosswalk design created a false sense of security for pedestrians using the crosswalk.  (See e.g., *Bunker v. City of Glendale*  (1980) 111 Cal.App.3d 325, 328-329 [negligently placed warning sign failed to warn motorist of

7

dangerous condition].)  City argues that perhaps Castro was not looking for traffic. One could argue that perhaps Castro, an adult, should have known better, but Diana Mariano (age six), Yazmin Mariano (age four) Alyson Birto (age five), and baby Emily Birto (in the stroller) were also injured.  The question of whether appellants' failure to look for cars relieves City of liability is for the trier of fact to decide. "[W]here the condition of property pose[s] a substantial risk of injury to the ordinary foreseeable user exercising due care, the fact the particular plaintiff may not have used due care is relevant only to his [or her] comparative fault and not to the issue of the presence of a dangerous condition.  [Citation.]" (*Huffman v. City of Poway* (2000) 84 Cal.App.4th 975, 992.)

City had notice that the crosswalk posed a risk of harm to pedestrians. In 1992 one of its own experts opined "there is no effective engineering solution to the crosswalk problem."  City conducted traffic enforcement sting operations in a two-year period before the collision.  In seven sting operations, law enforcement issued 97 failure-to-yield-to-a-pedestrian-in-a-crosswalk citations.  In a May 30, 2010 sting operation, officers issued 17 failure-to-yield-to-a-pedestrian-in-a-crosswalk citations over a two hour period.  City argues that only five failure to yield citations issued between the time the improvements were completed and the May 22, 2012 accident. But the evidence shows that local residents and business owners witnessed near miss pedestrian collisions, that a woman pedestrian was struck and seriously injured in the crosswalk in 2004, and that there were several auto collisions on Thousand Oaks Boulevard near the intersection.

In 2008, the University of California Berkeley Institute of Transportation Studies Technlogy wrote a pedestrian safety assessment report for City.   With respect to the Live Oak Street/Thousand Oaks Boulevard intersection, the report recommended that City (1) relocate the crosswalk to the northern side of the intersection, (2) construct bulbouts on the northern corners of the intersection, (3) add a median island with a pedestrian refuge, (4) provide flashing overhead beacons for motorists approaching from both directions, (5) consider installing a stutter flash

8

crosswalk beacon rather than a standard overhead flashing beacon, and (6) provide advance yield limit lines. The only recommendation implemented by City was to paint advance yield limit lines.

Appellant's traffic expert, Edward Ruzak, opined that other factors rendered the crosswalk a dangerous condition, including: a large tree that partially obstructed the advanced warning sign for the crosswalk; an overabundance of commercial signs and displays on Thousand Oaks Boulevard that are visual distractions to motorists; unpredictable traffic gaps; curb parking lanes that would cause a motorist to believe that a vehicle is stopping to park rather than stopping for a pedestrian; a large number of commercial driveways that create traffic conflicts near the crosswalk; sub-optimal warning signals; and the absence of a refuge island in the middle of the street which would permit a pedestrian to focus on the immediate traffic to his or her left until the pedestrian reached a point of safety on the island.

*Conclusion*

The rationale behind design immunity is to prevent a jury from reweighing the same factors considered by the governmental entity that approved the plan or design. (*Cameron v. State of California, supra,* 7 Cal.3d at p. 326.) As we have stated, there must be an actual plan or design approval. City did not show design immunity as a matter of law. (See e.g., *Hernandez v. Department of Transportation* (2003) 114 Cal.App.4th 376, 388 [material triable facts on whether Caltrans authorities approved off ramp design with no guardrail; summary judgment reversed].) Appellants' theory is that the warning beacon, even though intended to make the crosswalk safer, did the opposite and lulled pedestrians to think it was safe to cross. This is a jury question. Reasonable minds could differ on whether, under the totality of the circumstances, the intersection/crosswalk posed a substantial risk of injury to a pedestrian exercising due care. (*Bonanno v. Central Contra Costa Transit Authority, supra,* 30 Cal.4th at p. 148.) Summary judgment may not be granted where there are conflicting inferences as to material facts. (*Aguilar v. Atlantic Richfield Co.* (2001) 25

9

Cal.4th 826, 856; *Hernandez v. Department of Transportation, supra,* 114 Cal.App.4th at p. 388.)

The judgment (order granting summary judgment) is reversed. Appellants are awarded costs on appeal.

CERTIFIED FOR PUBLICATION


                                        YEGAN, J.

We concur:


GILBERT, P. J.


PERREN, J.

John Nguyen, Judge

Superior Court County of Ventura

_____

Grassini, Wrinkle & Johnson; Roland G. Wrinkle and Marshall J. Shepardson, for Plaintiffs and Appellants.

Engle, Carbini & Coats; Benjamin F. Coats and Jennie A. Hendickson, for Defendant and Respondent.