Filed 9/29/20  Marinache v. County of Santa Clara CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARIA MARINACHE et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>COUNTY OF SANTA CLARA,<br><br>Defendant and Respondent. | H045402<br>(Santa Clara County<br>Super. Ct. No. 115CV275517) |

John Marinache (Marinache) was riding his bicycle through a controlled intersection when he was struck by a car and killed.  Maria Marinache, Daniela Marinache, and Silvia Tripoli (appellants) filed a complaint for damages against the driver of car and the County of Santa Clara (the County).  The County obtained summary judgment based on design immunity, and appellants appeal.[1]  We affirm the judgment.

## I. BACKGROUND

In January 2014, Marinache was cycling southbound on San Tomas Expressway (San Tomas) as he approached the expressway's intersection with Campbell Avenue (Campbell).  From the left turn lane on San Tomas, he made a left turn onto Campbell.  As he was turning, he was struck in the intersection by Funes, who was traveling northbound on San Tomas.  According to a witness, the traffic signal for northbound traffic was green when Funes proceeded into the intersection.

---

[1] The parties aver in their briefs that the driver, Maria Luz Funes, has settled with plaintiffs and is not a party to this appeal.

Appellants filed a complaint against Funes and the County. Appellants alleged that the County was liable under Government Code section 835 because the intersection at San Tomas and Campbell was dangerous. Relevant to this appeal, appellants asserted that the intersection was negligently designed for two reasons: first, the traffic signal timing plan did not allow a cyclist to clear the intersection before opposing traffic was permitted to enter the intersection; second, the vehicle detectors in the road did not adequately account for or delay a signal change when a cyclist was present. In response to interrogatories, appellants explained that Marinache "commenced his turn on a proper signal, but was unable to clear the intersection prior to oncoming traffic."

The County filed an answer in which it alleged that it was not liable for the condition of the property because it had design immunity for that condition under Government Code section 830.6.

The County moved for summary judgment based on its design immunity defense. The County explained that the intersection of San Tomas and Campbell was redesigned in 2003. As a part of the redesign, the County installed new traffic signals, traffic signal controllers, and vehicle detectors. The design plan for the vehicle detectors was based on the County Standard Details Manual, dated September 1997, and the County Standard Specifications, dated May 2000. The design plan for the subject intersection was approved in June 2003 by Michael Murdter, the Director of Santa Clara County Roads and Airports Department, and Rollo Parsons, a Roads and Airports Branch Manager. As to the timing of the traffic signals, the County stated that County engineers designed the timing plan, and it was approved by County Senior Engineer Ananth Prasad.

The County contended that the vehicle detector design was reasonably approved. The County's civil engineer expert, James C. Jeffrey, submitted a declaration in support of the County's summary judgment motion. Jeffrey determined that the design of the County's vehicle detectors was reasonable. He noted that the 2003 design plan for the subject intersection included the "E/5A" vehicle detector design, which was depicted in

2

the County Standard Details Manual. That design, in turn, was made to "comply with the standards set by the National Electrical Manufacturer's Association" (NEMA), which "is an important and well-regarded organization that establishes industry standards regarding, among other things, electronic signaling devices." The "NEMA standards are relied upon throughout the traffic controller technology industry as reliable and reasonable."

Jeffrey also concluded that the signal timing plan was reasonable. He noted that "County expressways are not generally designed, expected, or intended to be used by novice or casual cyclists." This principle was expressed in the Valley Transit Authority Bicycle Technical Guidelines (VTA Guidelines), which stated that " 'only experienced cyclists are expected to ride on expressways whereas bike paths typically attract all skill levels and ages.' " (Italics removed.) The VTA Guidelines noted that "the typical speed of an experienced adult such as would be expected to ride on County expressways is roughly 26 feet per second," which is about 18 miles per hour. (Footnote removed.) Using an industry-standard calculation, Jeffrey determined the distance to be traveled for a left turn at this intersection was 105 feet. Based on that number, Jeffrey calculated that "the average adult cyclist would have had sufficient time to traverse the intersection." Jeffrey concluded that "the timing [plan] in place was entirely reasonable, particularly in view of the fact that a 2010 County speed study found low usage of the Expressway by *any* cyclists. To design an intersection that is rarely used by cyclists for the slowest possible cyclist is unreasonable, and would be a poor engineering choice."

Masoud Akbarzadeh, a County traffic engineer, also submitted a declaration in support of the summary judgment motion. Akbarzadeh confirmed that the vehicle detectors at the intersection in question were the E/5A design, which included "additional wire loops" at the front of the detector for "additional sensitivity."

Appellants filed opposition to the motion. The only element of the County's design immunity defense that appellants disputed was the "reasonableness" element.

3

They asserted that (1) the County "failed to introduce substantial evidence that its plans for signal timing and for inductive loop [vehicle] detectors at the Intersection were reasonably approved and designed," and (2) assuming the County established design immunity, "said immunity was lost due to the changed physical condition of the property under California Government Code [section] 830.6."

Appellants' traffic engineer expert Edward Ruzak opined that the vehicle detector design used at the subject intersection was not reasonable. Ruzak noted that in August 2003, the County formulated and published Expressway Bicycle Accommodation Guidelines (Bicycle Accommodation Guidelines). In it, the County determined that modified "Type E loop" and "Type D loop" were the preferred loop designs for vehicle detectors. The Bicycle Accommodation Guidelines further determined that "Caltrans Type A and Type E (unmodified)" should not be used because those designs " 'are not bike-sensitive in their center and, therefore should not be used on the expressway system.' " Ruzak determined that the E/5A vehicle detector design was similar to the Caltrans Type A and Type E unmodified design. Ruzak observed that the County's E/5A design only had detection wires on the outside of the loop, and that it lacked "detection wires in the center of the inductive loops . . . ." He concluded that the E/5A design "cannot detect bikes in the center of the loops," and therefore violated the County's own guidelines, as expressed in the Bicycle Accommodation Guidelines.

Ruzak also determined that the signal timing design was unreasonable. He noted that the Bicycle Accommodation Guidelines reflected that a "casual adult" cyclist would be expected to travel at 12 miles per hour, as opposed to 18 miles per hour "for fast or commuter bicyclists." Assuming "[a] southbound left turning bicyclist traveling into the intersection on the last milli-second of green," Ruzak calculated that a cyclist traveling at 12 miles per hour would not clear the intersection before opposing traffic was permitted to enter the intersection.

4

Appellants submitted additional portions of Prasad's deposition. Prasad explained that the left turn lanes on the County expressways were made to "accommodate bicycles" in part because the vehicle "detectors are capable of detecting bicycling . . . ." He described that the County uses "vehicle inductive loop" detectors as "our standard," and he confirmed that the vehicle detectors "are sensitive for bicycles[.]" When asked how he knew they were sensitive for bicycles, Prasad stated that the design, "the lead loop—the head loop at the intersection has an extra turn so it detects bicycles. That's our design. That's our standard." As to signal timing, he stated that "once [the County] started accommodating bicycles [on the expressways], we increased our minimum times to no less than eight [seconds]," which "generally covered the bicyclists that we expect on the expressways."

Appellants also submitted additional portions of Akbardzadeh's deposition. In this portion, Akbardzadeh was asked if he was "involved in any tests to determine if these E/5A loop detectors" were "effective . . . in detecting bicycles?" He replied that he did not participate in any such tests. However, he stated that "[o]ur experience is that they are picking up bicycles . . . [¶] . . . [b]ased on many years of use on the system"

The County's reply contended that even if the County had "sometimes recommended" a different vehicle detector design, the vehicle detector design used in the subject intersection was still reasonable because it conformed with applicable standards and was deemed reasonable through expert testimony. The County also contended that the signal timing plan was reasonable because it complied with industry standards and appropriately assumed that only experienced adult cyclists would use the expressway. In addition, the County asserted that the industry standard for timing assumes that a cyclist proceeds through the intersection at the first second of green, not the last second of green as assumed by appellants' expert. Finally, the County asserted that appellants' attempt to defeat design immunity failed because appellants did not show any changed physical condition. The County argued that appellants' theory of changed conditions relied on the

5

Bicycle Accommodation Guidelines, which constituted a technical development in guidelines and standards, not a changed physical condition as required for loss of design immunity.

The trial court granted the County's summary judgment motion. The court found that the County had met its burden to show that there was substantial evidence supporting the reasonableness of the vehicle detector design, and that appellants had not shown a change in physical conditions for loss of design immunity. Judgment was entered for the County, and appellants filed a timely notice of appeal.

## II. DISCUSSION

### A. *Standard of Review*

We review a decision granting summary judgment de novo, applying the same three-step analysis as the trial court. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).) First, we identify the causes of action framed by the pleadings. Second, we determine whether the moving party has satisfied its burden of showing the causes of action have no merit because one or more elements cannot be established, or that there is a complete defense to that cause of action. Third, if the moving party has made a prima facie showing that it is entitled to judgment as a matter of law, the burden of production shifts and we review whether the party opposing summary judgment has provided evidence of a triable issue of material fact as to the cause of action or a defense. (Code Civ. Proc., § 437c, subds. (o), (p)(2); *Aguilar*, at p. 850.)

### B. *Existence of Design Immunity*

"[Government Code] [s]ection 835, subdivision (b) provides that a public entity is liable for injury proximately caused by a dangerous condition of its property if the dangerous condition created a reasonably foreseeable risk of the kind of injury sustained, and the public entity had actual or constructive notice of the condition a sufficient time before the injury to have taken preventive measures." (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 68, footnote omitted (*Cornette*).)

6

"However, under [Government Code] section 830.6, the public entity may escape such liability by raising the affirmative defense of 'design immunity.' " (*Cornette*, *supra*, 26 Cal.4th at p. 69.) "[A] public entity claiming design immunity must establish three elements: (1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design." (*Ibid.*) The third element of reasonableness is a legal issue for the court to decide rather than a factual issue for a jury to determine. (*Id.* at p. 72.)

"The third element of design immunity, substantial evidence of reasonableness of design, requires only substantial evidence. '[A]s long as reasonable minds can differ concerning whether a design should have been approved, then the governmental entity must be granted immunity. The statute does not require that property be perfectly designed, only that it be given a design which is reasonable under the circumstances.' [Citation.] Generally, a civil engineer's opinion regarding reasonableness is substantial evidence sufficient to satisfy this element. [Citation.] Approval of the plan by competent professionals can, in and of itself, constitute substantial evidence of reasonableness. [Citation.]" (*Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 941 (*Grenier*).)

The normal rules governing motions for summary judgment, which require that the motion be denied if the party opposing the motion raises any triable issue of material fact, do not apply to the reasonableness element of the design immunity defense. (*Wyckoff v. State of California* (2001) 90 Cal.App.4th 45, 50-51.) " '[T]he defendant is not required to prove to the court that the design or plan was in fact a reasonable one. Instead, the defendant is merely required to adduce any "substantial evidence" that a reasonable public employee or legislative body could have approved the plan or design used . . . .' " (*Id.* at p. 51.) "We are not concerned with whether the evidence of reasonableness is undisputed; the statute provides immunity when there is substantial evidence of reasonableness, even if contradicted." (*Grenier*, *supra*, 57 Cal.App.4th at

7

p. 940.) "That a plaintiff's expert may disagree does not create a triable issue of fact." (*Id.* at p. 941.)

Appellants concede the first two elements of design immunity. On appeal they contend that the County failed to establish that substantial evidence supported the reasonableness of the plan or design with respect to signal timing and vehicle detectors. We first consider the evidence proffered by the County regarding the vehicle detector design.

In this case, Jeffrey stated that the vehicle detector design at issue was made to comply with the standards set forth by NEMA, a "a well-regarded organization that establishes industry standards" for "electronic signaling devices." Jeffrey confirmed that the vehicle detector design that was used conformed to the NEMA standards, which are considered "reliable and reasonable." Jeffrey concluded that the County's design for vehicle detectors was reasonable. This opinion alone is sufficient to satisfy the reasonableness element. (*Grenier*, *supra*, 57 Cal.App.4th at p. 941.) In addition, Prasad specified that the vehicle detectors at issue were "capable of detecting bicycles" because "the lead loop . . . has an extra turn so it detects bicycles." Akbarzadeh confirmed that "[b]ased on many years of use," the County's vehicle detector design detects bicycle traffic. In our view, these statements constituted substantial evidence that a reasonable public employee could have approved the vehicle detector design used, and that the design reasonably addressed bicycle traffic. That appellants presented expert evidence disputing the reasonableness of the vehicle detector design does not preclude summary judgment based on design immunity. (*Id.* at p. 940.)

Appellant points to the Bicycle Accommodation Guidelines, which recommended a different vehicle detector design, as evidence that the County's adopted design was unreasonable. This evidence, however, does not show that the County's design was unreasonable. "The fact, if it is a fact, that the [design element], in its original design, could have been made safer by [adopting a different design] is irrelevant." (*Dole Citrus*

8

*v. State* (1997) 60 Cal.App.4th 486, 494 (*Dole Citrus*).) The salient question is whether there is *any* substantial evidence to support the County's design decision—"it is irrelevant that a contrary opinion might have been offered." (*Compton v. City of Santee* (1993) 12 Cal.App.4th 591, 597 (*Compton*).) For these reasons we conclude the County plainly met this standard and thus was entitled to design immunity as to its vehicle detector design.

We reach the same conclusion regarding the County's signal timing plan. Here, Jeffrey concluded that the signal timing plan was reasonable, that it reflected the reasonable principle that only experienced cyclists would be expected to use County expressways, and that based on an industry-standard calculation "the average adult cyclist would have had sufficient time to traverse the intersection." This evidence satisfies the reasonableness element of design immunity. (*Grenier*, *supra*, 57 Cal.App.4th at p. 941.) Appellants argue, however, that the signal timing plan was unreasonable because a cyclist traveling 12 miles per hour entering the intersection at the last second of the green turn signal would not clear the intersection before opposing traffic was permitted to enter the intersection. This point does not render the signal timing plan unreasonable. First, the signal timing plan was based on the reasonable assumption that only experienced adult cyclists traveling 18 miles per hour would use the expressway. Second, the County presented evidence that the industry standard for signal timing with respect to bicycles is to assume that the cyclist starts to traverse the intersection on the *first* second of green, not the last second. Thus, the County was also entitled to design immunity as to its signal timing plan at the subject intersection.

## C. *Loss of Design Immunity*

Design immunity does not necessarily last forever. "[T]o demonstrate loss of design immunity a plaintiff must establish three elements: (1) the plan or design has become dangerous because of a change in physical conditions; (2) the public entity had actual or constructive notice of the dangerous condition thus created; and (3) the public

9

entity had a reasonable time to obtain the funds and carry out the necessary remedial work to bring the property back into conformity with a reasonable design or plan, or the public entity, unable to remedy the condition due to practical impossibility or lack of funds, had not reasonably attempted to provide adequate warnings." (*Cornette*, *supra*, 26 Cal.4th at p. 72.)

Here, appellants argue that the County lost design immunity under two theories. First, appellants contend that the Bicycle Accommodation Guidelines represent "a technological advancement at the Intersection in question," which was "evidence that the prior condition . . . was dangerous" and should be changed. Second, appellants contend that the County's vehicle detector design "was adopted from the 1986 NEMA standard," which they assert "does not reliably detect bicycle traffic in operation." Thus, they argue that when the County in 1991 "adopted a policy to remove prohibitions and accommodate bicycles on the expressway," this "constitute[d] a change in the physical condition at the Intersection that would prevent the County from acquiring design immunity based on its use of the prior 1986 NEMA design."

Appellants' arguments are unavailing. With respect to their first contention, a change in design standards cannot satisfy the first element required for loss of design immunity—a changed *physical* condition. "In [*Dole Citrus*], the Fourth Appellate District reviewed whether an overcrossing that had been built according to then-existing highway standards was nonetheless later maintained in a dangerous condition in light of a change in certain design standards. In the course of its evaluation, the *Dole Citrus* court . . . summarized the state of the law as follows: '[E]vidence of changed conditions must be evidence that *physical conditions at a specific location* have changed in such a manner that the original design has created a dangerous condition of which the entity has notice.' [Citations.]" (*Dammann v. Golden Gate Bridge, Highway & Transportation Dist.* (2012) 212 Cal.App.4th 335, 345.) "[O]ur Supreme Court" has "made clear that 'changed physical conditions' are required to defeat a defense of design immunity." (*Id.* at p. 348.)

10

At best, the Bicycle Accommodation Guidelines were a change in design standards; these changed guidelines do not constitute a changed *physical* condition. Thus, appellants cannot rely on them to defeat a design immunity defense.

With respect to appellants' next contention, their argument fails because they rely on evidence that, if proved, would demonstrate design limitations in the vehicle detector system that existed prior to 2003. We have already determined that the County was entitled to design immunity in 2003 for the signal timing plan and vehicle detector design adopted for the subject intersection. Since design immunity was established as to that date, appellants must necessarily point to a changed physical condition that occurred *after* the 2003 design plan was reasonably adopted. (See *Alvis v. County of Ventura* (2009) 178 Cal.App.4th 536, 555 [a "claimed change in physical conditions cannot be based on the same technical data or policy decisions that went into the original plan or design"].) Appellants instead make an argument involving the County's decision to allow bicycles on the expressway in 1991 based on the allegedly flawed NEMA design, which happened well before the 2003 design plan was reasonably approved. "Without evidence of some [physical] change, a design which was reasonably approvable at its inception remains reasonably approvable today." (*Compton*, *supra*, 12 Cal.App.4th at p. 598.) Appellants' arguments here thus do not establish loss of design immunity.

### D. *Dangerous Condition Claim*

Appellants argue that the "County's putative design immunity is not absolute" and, citing *Castro v. City of Thousand Oaks* (2015) 239 Cal.App.4th 1451 (*Castro*), they contend that the trial court erred "by deciding an issue that is properly for the jury's consideration." They assert that notwithstanding the doctrine of design immunity they are entitled to have a jury determine their dangerous condition claim.

As respondent observes, this argument was not presented to the trial court. "[A]rguments not asserted below are waived and will not be considered for the first time on appeal." (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn.

11

3.)  Because appellants raise the argument for the first time on appeal, the argument is waived.  In addition, even if we were to overlook waiver, appellants' reliance on *Castro* is misplaced.  In *Castro*, the design elements at issue were " '[a]dd-ons' " and "not part of the approved plan or design"—they "were installed after the [relevant project] [was] approved . . . ."  (*Castro*, *supra*, 239 Cal.App.4th at p. 1453.)  Because of this, the appellate court found that the defendant had not demonstrated discretionary approval of the plan or design prior to construction.  (*Id.* at p. 1455.)  Only after finding the doctrine of design immunity inapplicable on that basis did the *Castro* court turn to look at whether there was an issue of fact concerning the plaintiffs' dangerous condition claim.  (*Ibid.*)  In this case, the element of discretionary approval of the plan or design prior to construction is undisputed—only the reasonableness element is at issue.  And as to that element, as we have discussed, the County was entitled to design immunity.  Appellants' argument that they were entitled to have the jury hear their dangerous condition claim is contrary to established law and we reject it.

### III.  DISPOSITION

The judgment is affirmed.

_____
                         Greenwood, P.J.



WE CONCUR:




_____
  Premo, J.




_____
  Bamattre-Manoukian, J.




Marinache et al. v. County of Santa Clara
No. H045402