Filed 11/21/24; Certified for Publication 12/19/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JURAJ KABAT et al., | |
| Plaintiffs and Appellants, | G063082 |
| v. | (Super. Ct. No. 30-2021-01214091) |
| DEPARTMENT OF TRANSPORTATION, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Nathan R. Scott, Judge. Affirmed.

Dordick Law Corporation, Gary A. Dordick and John M. Upton for Plaintiffs and Appellants.

Erin E. Holbrook, Chief Counsel, Jeffrey R. Benowitz, Deputy Chief Counsel, John F. Smith, Julie A. Jordan, Scott R. Fridell and Zahra Khoury, Assistant Chief Counsel, for Defendant and Respondent.

\*          \*          \*

A bicyclist was struck by a vehicle as she was crossing a marked, non-signalized crosswalk on an onramp from Jeffrey Road in the City of Irvine leading to the I-405 freeway northbound. The bicyclist's parents, Juraj Kabat and Silvia Kabatova (collectively, Plaintiffs), sued the Department of Transportation (Caltrans), the City of Irvine (the City), and others for her resulting death. The sole cause of action against the public entities was liability for a dangerous condition of public property. (Gov. Code, § 835.)[1] Plaintiffs claimed that the public entities created a dangerous condition by not signalizing the crosswalk, failing to provide adequate signage, and/or setting the speed limit too high for pedestrians and bicyclists to safely use the crosswalk, and that they failed to warn of the dangerous condition.

The trial court granted motions for summary judgment, filed separately by Caltrans and the City, on the grounds that there was no triable issue of material fact on design immunity (§ 830.6), an affirmative defense that shields a public entity from liability for creating a dangerous condition, and that as a matter of law the intersection's lack of a traffic control signal was not dangerous (§ 830.4). As to Caltrans's motion, the court also found Plaintiffs failed to raise a triable issue whether the alleged dangerous condition constituted a concealed trap, and assuming a failure-to-warn claim was pleaded, Plaintiffs failed to show a triable issue of material fact about

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

2

notice, concealment, or causation. In this appeal, Plaintiffs contend the court erred in granting summary judgment to Caltrans because there are triable issues of material fact on all grounds relied upon by the court. We disagree with Plaintiffs and therefore affirm the judgment.[2]

FACTS

Caltrans's summary judgment motion was also directed at the cross-complaint of the driver and the alleged owner of the car, for indemnity, declaratory relief, and apportionment of fault. Because only Plaintiffs appealed the trial court's ruling on Caltrans's motion for summary judgment, we limit our summary of the facts to matters relevant to those claims.

I.

THE ACCIDENT

The following facts are taken from allegations in the complaint not controverted by Caltrans, material facts in the separate statement deemed undisputed by both sides, or evidence submitted in support of or in opposition to the summary judgment motion that is essentially uncontroverted by the parties for the purpose of the motion.

On the morning of July 11, 2020, Hernan Javier Dell Aquila was driving westbound on Jeffrey Road in Irvine, heading toward the northbound I-405 onramp from Jeffrey Road (the Jeffrey onramp). The posted speed limit on Jeffrey Road is 50 miles per hour, and the posted speed limit on the I-405 freeway is 65 miles per hour.

---

[2] Plaintiffs separately appealed from the summary judgment for the City. In a companion opinion filed today, we also affirm that judgment. (*Kabat v. City of Irvine* (November 21, 2024, G063084) [nonpub. opn.].)

The Jeffrey onramp crosswalk allows bicyclists and pedestrians to cross the Jeffrey onramp. The crosswalk is about 11 feet wide (measured center to center on white lines) near the gore point of the northbound I-405, with a left shoulder and right shoulder. There are two pedestrian crossing signs facing traffic approaching the Jeffrey onramp. One sign is located about 150 feet ahead of the crosswalk. The other is at the north end of the crosswalk, and directly below it is a sign of an arrow pointing down and toward the foot of the crosswalk. The crosswalk within the Jeffrey onramp is not signalized, but the crosswalk within the offramp from the I-405 freeway northbound at Jeffrey Road is signalized.

At the same time Dell Aquila was driving, Plaintiffs' daughter, Barbora Kabatova (Kabatova), was bicycling in the area. As Dell Aquila's car entered the Jeffrey onramp, it struck Kabatova as she was crossing the Jeffrey onramp crosswalk.[3] The collision occurred on the Jeffrey onramp, 23 feet north of Jeffrey Road. Kabatova died from injuries caused by the collision.

The Jeffrey onramp is part of a larger I-405 freeway interchange that is owned and controlled by Caltrans. The interchange was originally constructed by the predecessor agency to Caltrans, formerly known as the State of California Division of Highways, based upon plans that were prepared and completed in 1967 (the 1967 plans). The interchange underwent improvements twice, once based on plans completed in 2006 (the 2006 plans) and most recently based on plans completed in 2015 (the 2015 plans).

---

[3] It is not clear from the record whether Kabatova was biking or walking her bicycle through the crosswalk.

4

## THE RELEVANT PLEADINGS

### A. *The Complaint*

Plaintiffs sued Dell Aquila, Caltrans, the City, and others for Kabatova's death. The sole cause of action asserted against the public entities was liability for dangerous condition of public property under section 835 et seq., based on the following allegations.

The public entities designed, built, owned, altered, inspected, and maintained the subject area where the accident occurred, including the crosswalk, intersection, and street or highway. The subject area "possessed physical characteristics in its design, location, features, and/or relationship to its surroundings that endangered the users using the crosswalk." The posted speed limits were too high such that pedestrians and bicyclists who visually check for traffic approaching the Jeffrey onramp would not be able to determine if they had enough time to safely traverse the entire crosswalk before a vehicle hit them. The design, construction, and maintenance of the bike path next to Jeffrey Road leading up to the Jeffrey onramp was dangerous and unsafe because it did not provide pedestrians and bicyclists with a safe way to cross the highway.

The public entities knew or should have known the Jeffrey onramp was dangerous; was poorly designed, constructed and maintained; and had a substantial history of similar accidents and near-hits. The public entities, however, "failed to make any proper changes or take any precautions to ensure the safety of the pedestrians and/or bicyclists." They failed to provide adequate warnings and signs, failed to place sufficient traffic controls, failed to monitor the speed limit, failed to properly mark the

5

crosswalk, and failed to build, design, and maintain the subject area "so as to constitute a trap condition" where motorists approaching the Jeffrey onramp and pedestrians and bicyclists using the crosswalk couldn't see one another. They "did not install any safety measures," such as placing a traffic signal light, installing proper signage, and placing proper posted speed limits.

Had the public entities "installed a proper traffic signal, placed proper warning signals and proper posted speed limits," Dell Aquila "would have observed the traffic signal, the proper warning signals, obeyed the speed limit and thereby avoid[ed striking and killing Kabatova]." Plaintiffs suffered resulting damages, including substantial medical expenses, funeral and burial expenses, and emotional damages.

*B. Caltrans's Answer*

In response to the complaint, Caltrans filed a general denial and asserted affirmative defenses, including three statutory exceptions limiting liability for claims involving a dangerous condition: (1) section 830.4, which provides that the mere failure to provide certain regulatory traffic control signals, signs, and distinctive roadway markings is not a dangerous condition; (2) section 830.6, which gives public entities design immunity for injuries caused by qualifying preapproved plans or designs; and (3) section 830.8, which gives public entities limited signage immunity for injuries caused by the failure to provide certain traffic signals, signs, markings, or devices.

III.

THE SUMMARY JUDGMENT MOTION

Caltrans filed a motion for summary judgment on the complaint, the following grounds: (1) it is entitled to the complete defense of design

6

immunity (§ 830.6); and (2) Plaintiffs cannot establish their claim for dangerous condition of public property because the asserted dangerous condition fails pursuant to the immunities in sections 830.4 and 830.8.

In opposition, Plaintiffs argued four main points: (1) Caltrans didn't meet its burden of showing design immunity, specifically the elements of discretionary approval and reasonableness of design; (2) in any event, design immunity does not categorically preclude failure-to-warn claims; (3) triable issues of fact exist concerning whether the configuration of the roadway and crosswalk created a dangerous condition; and (4) Caltrans could not rely on sections 830.4 and 830.8 because the dangerous condition was a concealed trap, which is an exception to signage immunity.

In its reply, Caltrans argued the sole cause of action against it was for dangerous condition of property, not failure-to-warn. Caltrans also argued Plaintiffs attempted to create a triable issue without presenting admissible competent evidence that it failed to warn against a concealed trap.

The trial court granted the motion, citing four main grounds. First, Caltrans met its initial burden of establishing the defense of design immunity (§ 830.6), but Plaintiffs failed to raise a triable issue of material fact in opposition. Second, Caltrans showed as a matter of law the intersection's lack of a traffic control signal was not dangerous. (§ 830.4.) Third, Plaintiffs failed to raise a triable issue whether the alleged dangerous condition constituted a concealed trap. Fourth, assuming a failure-to-warn claim was pleaded, Plaintiffs failed to show a triable issue of material fact about notice, concealment, or causation.

The court entered judgment accordingly, and Plaintiffs timely appealed.

7

DISCUSSION

I.

STANDARD OF REVIEW

We review the grant of summary judgment de novo. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 (*Merrill*).) "[W]e apply the traditional three-step analysis used by the trial court, that is, we (1) identify the pleaded issues, (2) determine if the defense has negated an element of the plaintiff's case or established a complete defense, and if and only if so, (3) determine if the plaintiff has raised a triable issue of fact." (*Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 175, fn. omitted (*Meddock*).) We "consider[ ] all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill*, at p. 476.) "Because a summary judgment denies the losing party its day in court, we liberally construe the evidence in support of that party and resolve doubts concerning the evidence in that party's favor." (*Creekridge Townhome Owners Assn., Inc. v. C. Scott Whitten, Inc.* (2009) 177 Cal.App.4th 251, 255.)

II.

DANGEROUS CONDITION OF PUBLIC PROPERTY

Under the Government Claims Act (§ 810 et seq.), "a public entity is not liable for injuries except as provided by statute." (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829 (*Brown*); § 815). "[S]ection 835 sets out the exclusive conditions under which a public entity is liable for injuries caused by a dangerous condition of public property." (*Brown*, at p. 829.) "To establish liability under section 835, a plaintiff must show: '(1) "that the property was in a dangerous condition at the time of the injury";

8

(2) "that the injury was proximately caused by the dangerous condition"; (3) "that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred"; and (4) either (a) that a public employee negligently or wrongfully "created the dangerous condition" or (b) that "[the] public entity had actual or constructive notice of the dangerous condition under section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."'" (*Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639, 653 (*Tansavatdi*).)

"Thus, section 835 expressly authorizes two different forms of dangerous conditions liability: an act or omission by a government actor that *created* the dangerous condition (§ 835, subd. (a)); or, alternatively, failure 'to protect against' dangerous conditions of which the entity had notice (*id.*, subd. (b))." (*Tansavatdi*, *supra*, 14 Cal.5th at p. 653.) The phrase "protect against" includes "warning of a dangerous condition." (§ 830, subd. (b).)

Here, Plaintiffs alleged both theories of liability under a single cause of action for liability of dangerous condition of public property. (See *Crowley v. Katleman* (1994) 8 Cal.4th 666, 683, fn. 11 ["When a complaint alleges multiple theories of liability or 'counts,' the counts 'are merely ways of stating the same cause of action differently'"].) On appeal, Plaintiffs contend there are triable issues of material fact on both theories. We address each theory in turn.

### III.

### LIABILITY FOR CREATING A DANGEROUS CONDITION

The trial court found Caltrans had established design immunity and that Plaintiffs failed to meet their shifted burden of showing a triable issue of material fact concerning this defense. Rather than presenting

9

evidence to refute the second element of the defense, Plaintiffs argued Caltrans had not carried its initial burden of establishing that element.[4] The trial court found, however, that Caltrans established the second element, discretionary approval, through expert testimony and documents showing state engineers approved the 1967 plans, the 2006 plans, and the 2015 plans. We agree with the court and further conclude Caltrans met its initial burden of showing discretionary approval of the plan or design prior to construction, as a matter of law.

Even when a plaintiff shows a public entity created a dangerous condition of public property (§ 835, subd. (a)), the public entity may still escape liability under that theory "by raising the affirmative defense of *design immunity.* (§ 830.6.)" (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 66, italics omitted.) "The rationale for design immunity is to prevent a jury from second-guessing the decision of a public entity by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan or design." (*Id.* at p. 69.) To successfully claim the immunity, a public entity "must establish three elements: (1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design." (*Id.* at p. 66.)

_____

[4] Although Plaintiffs also argued below that Caltrans failed to establish the third element of design immunity (reasonableness of the design), they have abandoned this argument by failing to raise it on appeal. (*Meddock, supra,* 220 Cal.App.4th at p. 175, fn. 2 [theories advanced in opposition to summary judgment at trial level that are not raised on appeal are deemed abandoned].)

10

Discretionary approval "'simply means approval in advance of construction by the legislative body or officer exercising discretionary authority.'" (*Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 940 (*Grenier*).) It is satisfied by showing the plan or design was *either* (1) "approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval" *or* (2) "prepared in conformity with standards previously so approved." (§ 830.6; see *Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 350.) If the relevant facts are undisputed, the issue of discretionary approval may be resolved as a matter of law. (*Grenier*, at p. 940.)

"Discretionary approval need not be established with testimony of the people who approved the project. Testimony about the entity's discretionary approval custom and practice can be proper even though the witness was not personally involved in the approval process." (*Dobbs v. City of Los Angeles* (2019) 41 Cal.App.5th 159, 161 (*Dobbs*); *Gonzales v. City of Atwater* (2016) 6 Cal.App.5th 929, 947; *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1263.) "A detailed plan, drawn up by a competent engineering firm, and approved by [the public entity's] engineer in the exercise of his or her discretionary authority, is persuasive evidence of the element of prior approval." (*Grenier*, *supra*, 57 Cal.App.4th at p. 940.)

Here, Caltrans presented undisputed evidence of discretionary approval of the 1967 plans, the 2006 plans, and the 2015 plans through the declarations of Caltrans employees and Christian Engelmann, a licensed civil engineer and licensed traffic engineer for over 24 years, who worked for Caltrans from December 1999 through July 2016.

Caltrans owns and controls the Jeffrey onramp, which is part of the Jeffrey interchange. It "ha[s] full possession and control of all state highways . . . [and] is authorized and directed to lay out and construct all state highways . . . ." (Sts. & Hy. Code, §§ 20, 90.) It is the responsibility of Caltrans to "improve and maintain the state highways." (*Id.*, § 91.) It "may delegate to any such city or county any part of the powers and jurisdiction vested by law in [it], except the power of approval, with respect to any portion of any such state highway within such city or county." (*Id.*, § 116.) And it "shall determine the kind, quality, and extent of all highway work done under its control, and may prepare and approve all plans, specifications, and estimates for all such work." (*Id.*, § 137.) "The design of, the drafting of specifications for, and the inspection and approval of state highway structures shall be by [licensed] civil engineers." (*Id.*, § 137.6.) According to expert Engelmann, engineers—whether Caltrans, local agency employees, consultants, Caltrans Oversight Engineers and Caltrans Permit Engineers— can exercise discretionary authority and may either decline to approve a set of plans or approve the plans, allowing the project to proceed to the construction phase.

The 1967 plans were for the original construction of the Jeffrey onramp, completed in 1969. The 1967 plans were approved in 1967 by licensed engineers.

The 2006 plans involved the reconstruction of the Jeffrey onramp, inclusion of a new marked crosswalk on the Jeffrey onramp, and the widening of Jeffrey Road. The City funded and administered the project, while Caltrans's Design Oversight Engineer oversaw the design aspects. The design called for the onramp traffic to not be stopped either by a stop sign or

12

signal. The 2006 plans were approved in 2004 by City engineers, Caltrans's Design Oversight Engineer, and the Caltrans Encroachment Department (Permits).

The 2015 plans included resurfacing the Jeffrey onramp with asphalt concrete and refreshing the pavement delineation and markings. The 2015 plans were signed and approved in 2013 by Ahn P. Tran., Civil Engineer License No. 56206. According to Engelmann, Tran's signature on the design plans reflects her approval of the design prior to construction and indicates that the plans met the applicable highway design standards and procedures.

The foregoing evidence satisfies Caltrans's burden of showing discretionary approval, as a matter of law. (*Dobbs, supra*, 41 Cal.App.5th at p. 161; *Grenier, supra*, 57 Cal.App.4th at p. 940.)

In opposition, Plaintiffs argue Caltrans's evidence is insufficient to meet their initial burden because it did not show the specific engineers who approved the plans had been delegated or vested with discretionary authority to approve them. In support of this argument, Plaintiffs rely heavily on *Castro v. City of Thousand Oaks* (2015) 239 Cal.App.4th 1451 (*Castro*). That case is distinguishable.

In *Castro*, the city had implemented certain safety features to a crosswalk pursuant to plans approved by the city council. (*Castro, supra*, 239 Cal.App.4th at p. 1454.) After these improvements were completed, a city employee purchased and issued a work order to install a pedestrian warning beacon, which was not a part of the approved plans. (*Id.* at pp. 1454, 1456.) The beacon later became the subject of a personal injury lawsuit, which the city prevailed on at summary judgment on the basis of design immunity. (See *id.* at pp. 1453–1455.) The city had argued a municipal code vested the city

13

employee, who was not a member of the city council, with discretionary authority to add the beacon. (*Id.* at p. 1456.) The appellate court reversed. (*Id.* at p. 1453.) In rejecting declarations by current and former city employees that the employee who ordered the beacon was authorized to approve a design for it (*id.* at p. 1456), the appellate court explained that design immunity requires "an actual plan or design, i.e., something other than an oral 'after the fact' statement that 'I had authority and I approved my own safety idea'" (*id.* at 1457).

Here, unlike in *Castro*, the Legislature has vested Caltrans (and only Caltrans) with discretionary authority to approve highway plans and has required a licensed civil engineer sign off on them. (Sts. & Hy. Code, §§ 20, 90–91, 116, 137, 137.6.) As an entity, Caltrans can act only through its employees or agents. The 1967 plans, the 2006 plans, and the 2015 plans are signed by Caltrans employees or licensed engineers. Those signatures reasonably support the uncontradicted inference that the plans received Caltrans's discretionary approval. (*Merrill*, *supra*, 26 Cal.4th at p. 476.)[5]

Because we conclude Caltrans established discretionary approval under the first alternative, we do not reach Caltrans's other argument that the plan or design conformed with previously approved standards.

---

[5] On appeal, Plaintiffs contend the trial court abused its discretion in overruling their objections to portions of the Engelmann declaration on discretionary approval of the plans and approval of a state manual. For the reasons discussed in this section, we conclude the court did not err.

## IV.

### LIABILITY FOR FAILING TO WARN OF A DANGEROUS CONDITION

The trial court found, among other things, that Plaintiffs had not shown a triable issue of material fact that Caltrans had notice of a dangerous condition (§ 835.2), a required showing to prevail under the failure-to-warn theory (§ 835, subd. (b)). On appeal, Plaintiffs argue the issue of notice should be decided by the jury. We are unpersuaded.

Regardless of design immunity, a public entity may still be liable for "fail[ing] to warn of [the] immunized design element" (*Tansavatdi, supra,* 14 Cal.5th at p. 660) if it "had actual or constructive notice of the dangerous condition under [s]ection 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition" (§ 835, subd. (b)). A "'[d]angerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).) Public property can "be in a dangerous condition 'because of the design or location of the improvement, the interrelationship of its structural or natural features, or the presence of latent hazards associated with its normal use.'" (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 149, italics omitted.)

A dangerous condition, however, does not arise from the "mere[ ] . . . failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings as described in [s]ection 21460 of the Vehicle Code." (§ 830.4.) Generally, a public entity is not liable

under section 835 "for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code." (§ 830.8.) This is commonly called signage immunity. (*Tansavatdi*, *supra*, 14 Cal.5th at p. 660.)

An exception to signage immunity applies to concealed traps. (*Tansavatdi*, *supra*, 14 Cal.5th at p. 654.) Under the concealed trap exception, section 830.8 does not exonerate a public entity "for injury proximately caused by such failure if a signal, sign, marking or device (other than one described in Section 830.4) was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care." (§ 830.8; *Tansavatdi*, *supra*, 14 Cal.5th at p. 654.)

Even if the dangerous condition is a concealed trap, "the plaintiff must prove the public entity *had notice* of the dangerous condition" to prevail on a claim under section 835, subdivision (b). (*Tansavatdi*, *supra*, 14 Cal.5th at p. 660.)

Plaintiffs rely on two cases for the proposition that the notice requirement does not apply if the public entity created the dangerous condition. Plaintiffs are mistaken. Both cases predate *Tansavatdi*. (*Brown*, *supra*, 4 Cal.4th 820; *Curtis v. State of California ex rel. Dept. of Transportation* (1982) 128 Cal.App.3d 668.) In addition, Plaintiffs misconstrue *Brown* and *Curtis*, neither of which supports their position. *Brown* concluded the opposite of what Plaintiffs urge: "Because there was no evidence that the District had notice of the allegedly dangerous condition, the superior court correctly ruled that the District could not be liable under section 835, subdivision (b)." (*Brown*, at p. 829.) And *Curtis* stands for the

16

uncontroversial proposition that "either negligence *or* notice will suffice" to recover under section 835. (*Curtis*, at p. 693.) In other words, a plaintiff needs to show the public entity either created the dangerous condition under subdivision (a) *or* had notice of it under subdivision (b) of the statute. (*Curtis*, at pp. 691–692.)

Thus, under the failure-to-warn theory, Plaintiffs had to show Caltrans had notice, actual or constructive, of the dangerous condition. "To establish actual notice, '[t]here must be some evidence that the employees had knowledge of the particular dangerous condition in question'; 'it is not enough to show that the [public entity's] employees had a general knowledge' that the condition can sometimes occur." (*Martinez v. City of Beverly Hills* (2021) 71 Cal.App.5th 508, 519.) To establish constructive notice, the plaintiff must prove "the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." (§ 835.2, subd. (b).)

Here, Caltrans offered undisputed evidence it had no notice of the alleged dangerous condition. It is undisputed that Caltrans maintains a highly detailed computerized database that tracks the number and type of collisions, traffic volumes, and roadway geometric features on its 15,000-mile State Highway System, including all highway segments, ramps, and intersections. It is undisputed that a query of the database for an approximate ten-year period before and including the day of the accident in the area of the Jeffrey onramp showed no substantially similar accidents, i.e., involving a bicyclist during the same time of day, as the subject accident. And it is undisputed that there were about 13.1 million vehicles that passed

17

through the Jeffrey onramp in the decade before the subject accident "with no reported substantially similar collisions." With this, the evidence submitted by Caltrans showed it did not have notice of the dangerous condition alleged by Plaintiffs.

On the issue of notice, Plaintiffs submitted a declaration from their expert, Ed Ruzak, who opined: The design of Jeffrey Road westbound at and near the Jeffrey onramp "provided a false sense of security for motorists and bicyclists traveling westbound on Jeffrey Road with due care" and "forced [them] into a conflict with insufficient warning." The lack of a traffic signal was "sub-optimal" and "constitute[ed] a trap" because it "rendered the area deceptive to motorists and bicyclists;" it also made the bicyclists crossing the Jeffrey onramp susceptible to being hit by vehicles. "[Caltrans's] passive accident-based system of determining traffic control safety measures is inadequate to provide [Caltrans] and the City with sufficient notice of this dangerous condition. There is no evidence in this case that either [Caltrans] or the City queried the . . . databases at any time before the subject accident occurred."

"A party ""cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a trial issue of fact."""" (*Menges v. Department of Transportation* (2020) 59 Cal.App.5th 13, 23.) Nor can it "'manufacture a triable issue of fact through use of an expert opinion with self-serving conclusions, devoid of any bias, explanation or reasoning.'" (*Ibid.*) We conclude Ruzak's opinion that the Caltrans databases are "inadequate" to provide notice is conclusory and does not create a triable issue concerning the issue of notice.

18

We also do not see the logic behind Plaintiffs' argument that there is no evidence the public entities used the databases before the subject accident occurred. The argument appears to respond to language in section 835.2, subdivision (b), which requires a plaintiff alleging constructive notice of a dangerous condition to prove, among other things, that the condition "was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." Evidence of due care includes "[w]hether the existence of the condition and its dangerous character *would have been discovered by an inspection system* that was reasonably adequate . . . to inform the public entity whether the property was safe . . . ." (§ 835.2, subd. (b)(1), italics added.) But regardless of when the databases were used, the relevant fact here is that they showed no similar accidents in the past decade. Thus, even if Caltrans had made earlier database queries, they would have not been placed on notice of any accidents like the one here.

For these reasons, the trial court properly found no triable issues of material fact with respect to Caltrans's lack of notice of the alleged dangerous condition.

19

## DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal.


DELANEY, J.

WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.

20

Filed 12/19/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JURAJ KABAT et al., | |
| Plaintiffs and Appellants, | G063082 |
| v. | (Super. Ct. No. 30-2021-01214091) |
| DEPARTMENT OF TRANSPORTATION, | O R D E R |
| Defendant and Respondent. | |

Respondent has requested that our opinion, filed on November 21, 2024, be certified for publication. It appears that the opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.

DELANEY, J.

WE CONCUR:

MOORE, ACTING P. J.

SANCHEZ, J.