[Civ. No. 47265. Second Dist., Div. Five. Aug. 19, 1976.]

DONNA THOMSON, Plaintiff and Appellant, v.
CITY OF GLENDALE, Defendant and Respondent.

**COUNSEL**

Fizzolio & Fizzolio and James M. Fizzolio for Plaintiff and Appellant.

Richard W. Marston, City Attorney, and Peter C. Wright, Assistant City Attorney, for Defendant and Respondent.

---

**OPINION**

ASHBY, J.—Plaintiff (appellant) appeals from a judgment in favor of City of Glendale (respondent) after a trial on the respondent's fourth affirmative defense of design immunity pursuant to Government Code section 830.6.

On October 2, 1973, appellant filed a complaint alleging two causes of action. Appellant's first cause of action alleged that she suffered injuries caused by the dangerous and defective condition of a public stairway. Appellant's second cause of action alleged that her injuries were caused by respondent's negligence in failing to comply with the Uniform Building Code in its construction of the public stairway. Respondent answered raising four affirmative defenses. This appeal concerns the fourth affirmative defense as set forth in respondent's amended answer that pursuant to the provisions of Government Code section 830.6 respondent was not liable for appellant's injuries because "[t]he plan and design of the construction of the stairs, handrails, ramp and sidewalk in [appellant's] complaint have been approved in advance of construction by The City Council of the City of Glendale, or proper employees exercising discretionary authority, and therefore the City of Glendale is not liable for injury to [appellant] . . . ."[1] The matter was tried on April 14, 1975, and judgment entered for respondent on May 30.

Appellant was injured on March 29, 1973, when she fell down a city-owned, controlled and maintained exterior staircase located between the City of Glendale's Public Services Building and its Municipal Services Building. As appellant was proceeding down a ramp to the stairway, she lost her balance and fell forward. She testified that she had lost her balance because of the slope of the sidewalk. She reached for the center handrail on the stairs but missed and fell, striking her head on the iron bars holding the handrail, and then rolled on down the stairs.

---

[1]Respondent was permitted to amend its answer setting forth its fourth affirmative defense in order to conform it to the proof introduced at the trial.

The trial court made the following findings of fact and conclusions of law:

"1. That the original design of the Glendale Municipal Services Building which included the northern stairway and approaching walkway, which constitutes the 'common stairway' between the Glendale Public Service Building and the Glendale Municipal Services Building, referred to in paragraph 2 of the complaint, were approved prior to construction by The City Council of the City of Glendale by Resolution No. 15,105 dated the 16th day of November, 1964.

"2. Said stairway and approaching walkway were constructed in accordance with the plans and specifications previously so approved.

"3. That there is substantial evidence upon the basis of which The City Council of the City of Glendale could have adopted these plans and specifications for the Municipal Services Building and particularly the northern stairway and approaching walkway.

"4. That The City Council of the City of Glendale acted reasonably in approving the plans and specifications for the Glendale Municipal Services Building and particularly the northern stairway and approaching walkway.

"5. That the original design of the central handrail, referred to in paragraph 3 of [appellant's] complaint as 'the handrail' was approved prior to construction by William H. Topham, Maintenance Superintendent of the City of Glendale.

"6. That the central handrail was constructed in accordance with said design previously so approved.

"7. That William H. Topham, Maintenance Superintendent, was a proper employee exercising discretionary authority to give such prior approval of the design of the central handrail.

"8. That there is substantial evidence upon the basis of which William H. Topham, Maintenance Superintendent, could have approved the design of the central handrail.

"9. That William H. Topham, Maintenance Superintendent of the City of Glendale acted reasonably in approving the design of the central handrail.

"10. There had been no change in the conditions upon which The City Council of the City of Glendale based its approval of the plans and specifications of the stairway and approaching walkway nor upon which William H. Topham, Maintenance Superintendent of the City of Glendale based his approval of the central handrail prior to [appellant's] accident.

". . . . . . . . . . . . . . . . . . .

"From the foregoing facts the Court concludes:

"11. To the extent the plan or design of the northern stairway, approaching walkway and central handrail to the Glendale Municipal Services Building were the cause of [appellant's] injury due to her fall thereon on May 29, 1973, neither the City of Glendale nor any of its employees is liable therefor.

". . . . . . . . . . . . . . . . . . ."

Appellant's basic contention is that the construction of the central handrail did not meet the requirements of Government Code section 830.6 and therefore respondent is not protected from liability by the provisions of that section. We find no merit in this contention.

Section 830.6 provides: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court deter-mines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor."

Appellant argues that William Topham, the superintendent of main-tenance, did not have the authority to approve a construction plan pursuant to section 830.6 for two reasons, neither of which is persuasive: First, that Mr. Topham at the time of approval was not licensed by the

State of California as an engineer or architect; and second, that the authority to exercise the permitted discretion was not exercised by the superintendent of buildings but was delegated by him to Mr. Topham without prior review by the city council of the railing design or approval of the delegation of discretionary authority to Mr. Topham.

 Section 830.6 contains no requirement that the "employee exercising discretionary authority" be either a licensed engineer or an architect, nor has appellant cited authority for that conclusion. We hold that no such requirement exists.

 Appellant's second reason is equally unpersuasive. It is clear that Mr. Topham was the proper person to exercise discretionary authority to approve the plans and design of the center handrail. Section 5, article X, of the Charter of the City of Glendale, provides: "THE PUBLIC WORKS DEPARTMENT shall have charge of: General engineering, traffic engineering, flood control, street and sewer construction and maintenance, assessments, building inspection, care of public buildings, collection and disposal of refuse, and installation, maintenance and removal of parkway trees and parkways."

Glendale Municipal Code section 1-37 provides: "Whenever a power is granted or a duty is imposed upon a city officer by this Code or any other ordinance of the city, the power may be exercised or the duty performed by an assistant or deputy of the officer or by a person authorized pursuant to law by the officer, unless this Code expressly provides otherwise."

Ed Cameron, Director of Public Works for the City of Glendale, testified that he had delegated to the superintendent of maintenance the responsibility of maintaining all the city facilities and that the construction of the center handrail was within the scope of that delegation.

 Appellant next argues that section 830.6 is inapplicable because the design of the handrail consisted solely of a shop drawing which was designed by an outside fabricator rather than a public employee.[2] We are

---

[2]Appellant does not argue that the original design of the stairway and side rails does not come within the design immunity provisions of section 830.6. The evidence supports the trial court's holding that the original plan was properly approved. The stairway and the east and west handrails approaching the walkway were part of the original plan and design for the construction of the Glendale Municipal Services Building and surrounding area. Those plans and designs were approved by the building department of the department of public works and approved by resolution of the city council on

not persuaded by this argument. There is no requirement that the design be expressed in any particular form. The plan need only be sufficiently explicit to assure that it is understandable to the employee giving the approval. The construction here was uncomplicated. Topham prepared a "sketch" to provide a "general idea of what we wanted." A shop drawing was submitted to Topham by Central Industrial Engineering Company prior to construction of the handrial. Topham testified that he approved the design and returned the drawings to the Central Industrial Engineer-ing Company. The evidence of the adequacy of the design is sufficient. Furthermore, there is no requirement under section 830.6 that the design be prepared by a public employee. It is standard practice to have construction plans and designs for public works prepared by private technicians. (See *Davis* v. *Cordova Recreation & Park Dist.,* 24 Cal.App.3d 789 [101 Cal.Rptr. 358]; Van Alstyne, Cal. Government Tort Liability (Cont. Ed. Bar 1964) p. 152 (§ 830.6, fn. 3).)

■ The trial court's finding[3] that there was substantial evidence that a reasonable employee could have adopted the plan or design or the standards therefor, is supported by substantial evidence.

The applicable provisions of the Uniform Building Code in effect at the time the center rail was installed required that: "Handrails shall be placed not less than 30 inches nor more than 34 inches above the nosing of treads, and ends of handrails shall be returned or shall terminate in newel posts or safety terminals." (§ 3305 (i).)

Evidence of the height of the handrail was conflicting. Philip Weary testifying for appellant stated that his measurements of the railing showed it to be 29⅝ inches in height on one measurement, and on another 29¾. He admitted that he found it difficult to measure the railing and to insure that the ruler was plumb because the railing goes up at a sharp angle. Mr. William Topham testified that the railing was 30-1/16 inches high. The trial court resolved the conflicts in the evidence in favor of respondent. It is not our function to reweigh that determination. Our power " '*begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' " (*Stevens* v. *Parke, Davis & Co.,* 9 Cal.3d 51,

November 16, 1974. It was conceded by appellant's expert, Mr. Philip Weary, that the construction and the slope of the approaching walkway were substantially in compliance with the Uniform Building Code in effect at the time of construction.

[3]"8. That there is substantial evidence upon the basis of which William H. Topham, Maintenance Superintendent, could have approved the design of the central handrail."

64 [107 Cal.Rptr. 45, 507 P.2d 653]; italics in original.) The determination as to whether the end of the handrail constituted a "safety terminal" was also resolved by the trial court in respondent's favor and also is supported by substantial evidence.

Appellant's contention that respondent offered no proof that the factor which caused the accident was a part of the design which was approved is totally without merit. Appellant alleged that the combination of the walkway ramp, stairway and center handrail were hazardous and caused the accident. The evidence supports respondent's contention that that construction was in accordance with the plan or design approved either by the city council or the appropriate employee.

Appellant's next contention is that section 830.6 fails to meet equal protection standards. Section 830.6 has been upheld by the California Supreme Court on many occasions since its enactment. In *Baldwin* v. *State of California,* 6 Cal.3d 424, 434 [99 Cal.Rptr. 145, 491 P.2d 1121], the court held that: "Our holding today is consonant not only with the intention of the Legislature but also with the purpose of design immunity. We think that enacting section 830.6, the Legislature was concerned lest juries be allowed to second-guess the discretionary determinations of public officials by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan."

That statement of the purpose of section 830.6 was reiterated in *Cameron* v. *State of California,* 7 Cal.3d 318, 324 [102 Cal.Rptr. 305, 497 P.2d 777].

Appellant next argues that section 830.6 does not immunize respondent from liability caused by negligence independent of design, even though the independent negligence was only a concurring proximate cause. Appellant's statement of the general proposition of law is correct. The California Supreme Court in *Cameron* v. *State of California, supra,* 7 Cal.3d 318, at page 329, held that "where the state is immune from liability for injuries caused by a dangerous condition of its property because the dangerous condition was created as a result of a plan or design which conferred immunity under section 830.6, the state may nevertheless be liable for failure to warn of this dangerous condition where the failure to warn is negligent and is an independent, separate, concurring cause of the accident." (Also see *Davis* v. *Cordova Recreation & Park Dist., supra,* 24 Cal.App.3d 789, 796-797.) ■ Thus section

830.6 must be read in conjunction with section 835, which provides that if an injury is caused by a dangerous condition on property of a public entity, and the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that the creation of that dangerous condition was caused by active negligence or that the public entity had actual or constructive notice of the dangerous condition in sufficient time to correct it or warn of its existence, then the public entity is liable for the injury.[4]

Appellant, however, did not plead or prove that her injury was caused by negligence independent of the design of the stairway and center handrail. Furthermore, appellant did not either plead or prove that respondent had actual or constructive notice of a dangerous condition and failed to warn of that condition. Thus, although appellant's statement of the law is correct in the abstract, it has no applicability to the instant case. The fact that the 1973 Uniform Building Code was changed and that the construction in question did not conform to the new standards, does not establish the existence of a dangerous condition. It was not error for the trial court to deny the admission of the 1973 code into evidence.

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 14, 1976.

---

[4]Government Code section 835 provides:

"Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."