Filed 4/8/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| HUMBERTO MARTINEZ et al.,<br><br>  Plaintiffs and Appellants,<br><br>v.<br><br>COUNTY OF VENTURA,<br><br>  Defendant and Respondent. | 2d Civil No. B244776<br>(Super. Ct. No. 56-2008-<br>00327795-CU-PO-SIM)<br>(Ventura County) |

      Humberto Martinez and his wife Liliana Ramirez sued the County of Ventura for injuries Humberto[1] suffered when his motorcycle struck an asphalt berm abutting a raised drain on the shoulder of a County-owned road. They contend the drain and asphalt berm constituted a dangerous condition of public property that caused Humberto's injuries. A jury agreed, but returned a defense verdict based on the County's design immunity. Concluding that the evidence was

---

[1] We refer to plaintiff Humberto Martinez by his first name where necessary to distinguish him from the plaintiff group, which consists of Humberto and his wife Liliana.

insufficient as a matter of law to support the jury's finding of design immunity, we reverse.

*FACTS AND THE PROCEEDINGS BELOW*

Humberto suffered paraplegic injuries when his motorcycle struck an asphalt berm abutting a raised drain (the top-hat drain system) on Box Canyon Road in Ventura County. The drain system was located on the shoulder just off the traveled portion of the roadway. It is undisputed that the County owned the property. The drain system consisted of a heavy steel cover on three legs elevated eight to ten inches off the ground, with a sloped asphalt berm to channel water into the drain.

Plaintiffs alleged that the top-hat drain system constituted a dangerous condition of public property pursuant to Government Code section 835.[2] The County asserted numerous affirmative defenses, including design immunity (§ 830.6), which is the subject of this appeal.

The case was tried to a jury. The County did not offer evidence of any engineering design plans for the top-hat drain system. The evidence showed that in 1990 the County Road Maintenance Division converted existing side inlet drains on Box Canyon Road to the top-hat design and that the top-hat drain system has been in common use since then, based on its hydraulic efficiency and safety.

Loren Blair, who was the County's Road Maintenance Engineer from 1983 to 1998, testified that he was "in charge in terms of approving the modification of the drains from side inlets to the drain caps," and that, as the Road Maintenance Engineer, he had "probably" approved the design of the drain. Blair's testimony was unrebutted.

---

[2] All statutory references are to the Government Code.

2

Blair, who is not himself a licensed engineer, testified that the top-hat drain system was not designed by a licensed engineer and that there were no engineering design plans for the top-hat drain system. Nazar Lalani, a former deputy director of the County's Department of Transportation, testified that he was not aware of any scientific or engineering analysis that was performed by the County for the top-hat drain system. Raul Gallo, who manages the road maintenance division of the County's Transportation Department, testified that the installation of the top-hat drain systems was a maintenance project, for which formal plans were not prepared. Loren Blair and other witnesses testified that the County's road maintenance staff designed and built the top-hat drain systems "in the field" in 1990. The drain system simply "evolved" based on experience in the field.

The jury found that the drain system was a dangerous condition of public property that caused Humberto's injuries. However, it rendered a verdict for the County based on design immunity. The trial court entered judgment in favor of the County.

*DISCUSSION*

*1. Standard of Review*

We review a claim of insufficient evidence to support a jury verdict under the substantial evidence standard of review. (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1188.) Substantial evidence is not synonymous with "any" evidence. (*DiMartino v. City of Orinda* (2000) 80 Cal.App.4th 329, 336.) Although the evidence is viewed in the light most favorable to the judgment, "' . . . this does not mean we must blindly seize any evidence in support of the respondent in order to

3

affirm the judgment. . . .'"  (*Rogers v. County of Los Angeles* (2011) 198 Cal.App.4th 480, 491.)

*2. The Legislative Scheme: Dangerous Condition of Public Property and Design Immunity*

Section 835, subdivision (b) provides that a public entity is liable for injury proximately caused by a dangerous condition of its property if the dangerous condition created a reasonably foreseeable risk of the kind of injury sustained, and the public entity had actual or constructive notice of the condition a sufficient time before the injury to have taken preventative measures.  A public entity may avoid liability for a proven dangerous condition of its property by proving the affirmative defense of "design immunity."  (§ 830.6.)

The purpose of design immunity "is to prevent a jury from second-guessing the decision of a public entity by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan or design. [Citations.]"  (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 69 (*Cornette*).  "'. . . [T]o permit reexamination in tort litigation of particular discretionary decisions where reasonable men may differ as to how the discretion should be exercised would create too great a danger of impolitic interference with the freedom of decision-making by those public officials in whom the function of making such decisions has been vested.' [Citation.]"  (*Ibid.*)

To prove the defense of design immunity, a public entity must establish three elements:  (1) the entity's discretionary approval of the plan or design prior to construction; (2) a causal relationship between the plan or design and the accident; and (3) substantial evidence supporting the

4

reasonableness of the plan or design.  (*Cornette*, *supra*, 26 Cal.4th at p. 69.)[3]

### 3. *The "Discretionary Approval" Element of Design Immunity*

Design immunity is an affirmative defense that the entity must plead and prove.  (*Cornette*, *supra*, 26 Cal.4th at p. 66.)  An entity's "failure to prove any of the enumerated ingredients is fatal to the applicability of the defense.  [Citations.]"  (*Mozzetti v. City of Brisbane* (1977) 67 Cal.App.3d 565, 574.)

We focus on the discretionary approval element of design immunity.  To prove that element, the entity must show that the design was approved "in advance" of the construction "by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved . . . ."  (§ 830.6.)  "Approval . . . is a vital precondition of the design immunity."  (*Johnston v. Yolo County* (1969) 274 Cal.App.2d 46, 52 (*Johnston*).)  Plaintiffs contend that there was no evidence that the County exercised its discretion to

---

[3] Section 830.6 provides in relevant part as follows:  "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefore or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefore."

5

approve the top-hat drain system before the drains were installed in 1990. We agree.

We first consider plaintiffs' contention that there was no plan or design for the top-hat drain system that existed before the drains were constructed in 1990. The evidence supports this contention. Although numerous witnesses described the top-hat drain system and identified it as a standard system used in the county, the County introduced no evidence of a design or plan for the drain system.

The County contends, based on *Thomson v. City of Glendale* (1976) 61 Cal.App.3d 378 (*Thomson*), that the absence of a formal engineering design does not defeat design immunity. The County's reliance on *Thomson* is misplaced. In *Thomson*, the plaintiff was injured when she fell down a city-owned exterior staircase with a central handrail. She contended that the design of the handrail caused her injuries. In support of its design immunity defense, the City produced the original design of the central handrail, a "shop drawing . . . ." (*Id.* at p. 385.) The plaintiff complained that the shop drawing was inadequate to support design immunity. The court disagreed: "There is no requirement that the design be expressed in any particular form. The plan need only be sufficiently explicit to assure that it is understandable to the employee giving the approval." (*Ibid.*)

Here, the evidence does not meet even the low standard set in *Thomson.* The County introduced no design at all for the top-hat drain, even something as simple as a shop drawing. The evidence showed that the maintenance workers simply built and installed the drains in the field as they saw the need for them. Whatever form the design is expressed in, it must be "sufficiently explicit to assure that it is understandable to the

6

employee giving the approval." (*Thomson*, *supra*, 61 Cal.App.3d at p. 385.) Because the County presented no evidence of any design, there was no evidence of a design that anyone with authority to approve it could approve.

Even if we were to conclude that there was sufficient evidence of a design for the top-hat drain system, plaintiffs contend that there was no evidence that any design was approved in advance of construction by someone exercising discretionary authority to give such approval on behalf of the County. This contention also has merit.

In many cases, the evidence of discretionary authority to approve a design decision is clear, or even undisputed. For example, "[a] detailed plan, drawn up by a competent engineering firm, and approved by a city engineer in the exercise of his or her discretionary authority, is persuasive evidence of the element of prior approval. [Citation.]" (*Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 940; accord, *Alvarez v. State of California* (1999) 79 Cal.App.4th 720, 734, *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1263.) When the discretionary approval issue is disputed, however, as it was here, we must determine whether the person who approved the construction had the discretionary authority to do so.

"In the affairs of a public entity (e.g., a county, city or public district) the locus of discretionary authority is fixed by law." (*Johnston*, *supra*, 274 Cal.App.2d at p. 52.) Accordingly, we look to "the law fixing the public entity's internal distribution of powers to discern whether the legislative body or, alternatively, some administrative board or officer, exercise[s] discretionary approval authority for the purpose of section 830.6." (*Ibid.*; see also *Thomson*, *supra*, 61 Cal.App.3d at p. 384

7

[examining the Glendale City Charter and Municipal Code to determine whether superintendent of maintenance had authority to approve construction plans.].)

The design at issue in *Johnston* was a double-curve alteration project on a county road. When an accident occurred at the curve, victims sued the County for dangerous condition of public property. In considering the County's design immunity defense, the court located the source of the County's discretionary authority in the Streets and Highways Code, which "repos[es] direct administrative responsibility [for county roads] in a county road commissioner." (*Johnston*, *supra*, 274 Cal.App.2d at pp. 52-53, citing the Collier-Burns Highway Act of 1947.) "By force of the Streets and Highways Code provisions, Yolo County's road commissioner . . . was the public agent exercising discretionary authority to approve the design of the double-curve alteration project . . . ." (*Id.* at p. 53.)

The County acknowledges that the Streets and Highways Code is the legal source of the County's discretionary authority to approve the drain system. Those provisions have not substantively changed since 1969, when *Johnston* was decided. Accordingly, the Ventura County Road Commissioner was the public agent who had discretionary authority to approve the design of the drain system. The County Road Commissioner did not testify at the trial. The County presented no evidence that the Road Commissioner had approved the top-hat design before the drain system conversion in 1990. We must, therefore, determine whether any person or entity other than the County Road Commissioner had discretionary authority to approve the top-hat drain system for the purpose of section 830.6. To do so, we look to "the law

8

fixing the public entity's internal distribution of powers . . . ." (*Johnston*, *supra*, 274 Cal.App.2d at p. 52.)

The County presented no evidence of its "internal distribution of powers" to demonstrate that the Road Commissioner was empowered to delegate the discretionary authority to some other body or person or that the Commissioner in fact did so. Instead, the County relied entirely on the testimony of Loren Blair, the retired County Road Maintenance Engineer, to prove the discretionary approval element of its design immunity defense. Blair testified that he approved the top-hat drain design in 1990, when the County converted the side inlet drains to the top-hat design. The County contends that Blair, as the County Maintenance Engineer, had discretionary authority to approve the top-hat design. The evidence does not support this contention. Blair did not testify that he had discretionary authority to approve the design and his testimony that he did approve the design was equivocal at best: he testified that, as the Road Maintenance Engineer at the time of the drain conversion, he "was involved probably with the approval of the installation, yes, sir." The County provided no evidence that the Road Commissioner had delegated to Blair the discretionary authority to approve drain design, either directly or indirectly. Without such evidence, there was no evidence that Blair had the requisite discretionary authority.

The County contends that Blair's testimony that he approved the design is substantial evidence of his discretionary authority because his testimony was unrebutted. The contention is meritless. The locus of a county's discretionary approval authority is fixed by law and with reference to the County's internal distribution of its powers. (*Johnston*, *supra*, 274 Cal.App.2d at p. 52.) The County cites no authority for the proposition that

9

the testimony of a highway maintenance supervisor that he "approved" the design of the top-hat drain, even if the testimony is uncontradicted, is substantial evidence of the discretionary approval element of design immunity in the absence of evidence that such authority had been assigned to him.

The County also contends that it is entitled to design immunity even in the absence of evidence of the discretionary approval required by section 830.6 because the top-hat drain system was a maintenance project for which formal plans are not prepared. For this contention, the County again relies on *Thomson*, where the court concluded that a City superintendent of maintenance exercised discretionary authority to approve the design of the handrail claimed to be the cause of the plaintiff's injuries. The County's reliance on *Thomson* is again misplaced. *Thomson* did not abrogate the statutory requirement that the design be approved in advance by someone exercising the discretionary authority to approve it. On the contrary, the evidence presented in *Thomson* methodically traced the path of discretionary authority from the original source, the Glendale City Charter, to the superintendent of maintenance who approved the design. (*Thomson*, *supra*, 61 Cal.App.3d at p. 384.) The evidence showed that the City Charter charged the Public Works Department with maintenance of city facilities. The Glendale Municipal Code empowered City officers to delegate their powers to deputies. The Director of the Public Works Department testified that he had delegated the responsibility for maintaining City facilities to the superintendent of maintenance and that the handrail was within the scope of that delegation. (*Ibid.*) *Thomson* thus confirms that a public entity seeking design immunity must establish the

10

discretionary approval element of the defense, even if the project is a maintenance project for which formal plans are not customarily prepared.

Finally, the County contends that the County's discretionary approval of the top-hat drain system may be implied from the extensive evidence of the system's consistent use based on its efficiency and safety. At oral argument, the County's attorney insisted that the repeated use of the design for 25 years evidenced the necessary discretionary approval. The County offers no authority for its theory of "implied" discretionary approval. We reject the theory, which would greatly expand the scope of design immunity without any showing that the Legislature intended that result.

In the absence of design immunity, a public entity is liable for reasonably foreseeable injuries proximately caused by a dangerous condition of its property. (§ 835.) The Legislature created the design immunity defense for an express purpose: to prevent the discretionary design decisions of government officers vested with authority to make those decisions from being second-guessed in litigation. (*Cornette*, *supra*, 26 Cal.3d at p. 69.) Design immunity thus protects only the "particular discretionary decisions" of "'. . . those public officials in whom the function of making such decisions has been vested.' [Citation.]" (*Ibid*.) For this reason, the public entity claiming design immunity must prove that the person or entity who made the decision is vested with the authority to do so. Recognizing "implied" discretionary approval would vitiate this requirement and provide public entities with a blanket release from liability that finds no support in section 830.6.

Here, as we have explained, there is no evidence that the discretionary authority to approve the top-hat drain design, which the

11

Streets and Highways Code reposed in the Ventura County Road Commissioner, was ever delegated to Loren Blair or any other County employee. In the absence of such evidence, the record does not support the element of discretionary approval and the County's design immunity defense fails. (*Mozzetti v. City of Brisbane*, *supra*, 67 Cal.App.3d at p. 574 [An entity's "failure to prove any of the enumerated ingredients is fatal to the applicability of the defense"].)

DISPOSITION

The judgment in favor of the County is reversed. As a matter of law, there is no design immunity. The jury's finding of a dangerous condition of public property is binding on retrial. The matter is remanded for retrial on issues not previously reached by the jury. Plaintiffs are awarded costs on appeal.

CERTIFIED FOR PUBLICATION.


O'DONNELL, J.[*]


We concur:



GILBERT, P. J.



YEGAN, J.

_____

[*] (Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

Charles R. McGrath, Judge

Superior Court County of Ventura
_____

Law Offices of Martin N. Buchanan, Martin N. Buchanan; Michael R. Rhames & Associates, PC, Michael R. Rhames, Hugh Jeffrey Grant, William Mackey for Plaintiffs and Appellants.

Benton, Orr, Duval & Buckingham, Bruce Alan Finck, Donald R. Wood for Defendant and Respondent.