Filed 1/29/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF
CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BETTY TANSAVATDI, | B293670 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. Nos. BC633651/ BC652435) |
| v. | |
| CITY OF RANCHO PALOS VERDES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of
Los Angeles County, Robert B. Broadbelt, Judge.  Affirmed
in part, vacated in part, and remanded with directions.

Mardirossian & Associates, Garo Mardirossian and
Armen Akaragian; The Linde Law Firm, Douglas A. Linde

and Erica A. Gonzales; Esner, Chang & Boyer, Holly N. Boyer and Shea S. Murphy for Plaintiff and Appellant.

Wesierski & Zurek, Frank J. D'Oro and David M. Ferrante; Pollak, Vida & Barer, Daniel P. Barer and Anna L. Birenbaum for Defendant and Respondent.

———————————————

## INTRODUCTION

In March 2016, appellant Betty Tansavatdi's son, Jonathan Tansavatdi, was riding his bicycle in the city of Rancho Palos Verdes when he collided with a turning truck, suffering fatal injuries.[1] Appellant sued the city, alleging a dangerous condition of public property under Government Code section 835.[2] According to appellant, the city had created a dangerous condition by removing a bicycle lane from the area of the accident, and had failed to warn of that dangerous condition, leading to the accident and Jonathan's death.

Following discovery, the city moved for summary judgment. Among other grounds, the city asserted it was entitled to design immunity under section 830.6. Under this provision, a public entity is immune from liability for creating a dangerous condition if it shows that: (1) a plan or

———————————————

[1] Because Jonathan and appellant shared the same last name, we refer to Jonathan by his first name.

[2] Undesignated statutory references are to the Government Code.

2

design caused the injury; (2) the plan or design had received discretionary approval before construction; and (3) substantial evidence supported the reasonableness of the plan or design. The city relied on plans for a street resurfacing project, which it claimed did not include a bicycle lane at the site of the accident. The trial court granted the city's motion, concluding it had proved entitlement to design immunity as a matter of law. The court did not address appellant's theory that the city was liable for failing to warn of a dangerous condition.

Challenging the court's ruling, appellant contends the city failed to establish any of the elements of design immunity. Alternatively, she claims her failure to warn theory should survive the application of design immunity. We conclude that design immunity shields the city from liability for the absence of a bicycle lane. However, following our Supreme Court's binding precedent, we hold that even where design immunity covers a dangerous condition, it does not categorically preclude liability for failure to warn about that dangerous condition. We therefore vacate the judgment in part and remand to the trial court to consider appellant's failure to warn theory.

## BACKGROUND

A. *The Accident and Appellant's Complaint*

On the afternoon of March 8, 2016, Jonathan was cycling in Rancho Palos Verdes, travelling south on Hawthorne Boulevard, past Dupre Drive and toward Vallon

3

Drive. Although other portions of Hawthorne Boulevard included a bicycle lane, the portion between Dupre and Vallon did not. As Jonathan arrived at the intersection of Hawthorne and Vallon, he intended to continue straight through the right-turn lane but collided with a south-bound semi-trailer truck that was turning right from Hawthorne to Vallon. He was killed in the collision.

In March 2017, appellant filed this lawsuit against the city and others, asserting a single cause of action for a dangerous condition of public property under section 835.[3] Appellant alleged that the city had both created a dangerous condition (or allowed it to be created) and failed to warn of a dangerous condition. The parties proceeded to discovery, focusing primarily on appellant's theory that the absence of a bicycle lane at the site of the accident constituted a dangerous condition and led to Jonathan's death.

B. *The City's Motion for Summary Judgment*

The city moved for summary judgment, arguing the affirmative defense of design immunity under section 830.6 shielded it from liability for the absence of a bicycle lane.[4] It

---

[3] The other defendants are not pertinent to this appeal.

[4] Section 830.6 provides: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee (*Fn. is continued on the next page*.)

4

further claimed that such design immunity also precluded liability for failure to warn of the allegedly dangerous condition. Alternatively, the city contended that the intersection was not dangerous, and that Jonathan had not used the property with due care.

      1. *The 2009 Plans*

In support of its claim for design immunity, the city submitted plans for a 2009 street resurfacing project (2009 plans), which included the resurfacing and restriping of Hawthorne Boulevard. Among other specifications, those plans included directions to install specific striping details, pavement markings, and signs. For certain portions of the project, the 2009 plans directed the inclusion of "'BIKE LANE' & ARROW" markings and the striping of continuous lines to the left of those markings, as shown in the following example:

---

exercising discretionary authority to give such approval . . . , if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design . . . or (b) a reasonable legislative body or other body or employee could have approved the plan or design . . . ."



Those portions of the project were also to include the following sign:



The plans also showed similar existing bicycle lane markings for portions of the project that were not to be resurfaced.

Multiple segments of Hawthorne Boulevard were to include these bicycle lane markings and signs under the 2009 plans. For the segment between Dupre Drive and Vallon Drive, however, the plans neither directed the inclusion of these elements nor showed any existing bicycle lane markings or signs.[5]

---

[5] This entire segment of Hawthorne Boulevard was to be resurfaced under the 2009 plans.

6

The plans had been prepared by a private engineering firm and submitted to the city for approval. The plans showed that in June 2009, Jim Bell, the city's Director of Public Works at the time, signed each of the plans' sheets in a designated space reserved for the Director of Public Works and captioned, "APPROVED."[6]

## 2. *Nicole Jules's Deposition and Declaration*

The city provided transcripts of the deposition of Nicole Jules, a former city employee who started as a senior engineer for the city in 2001, and later served as the city's Deputy Director of Public Works and Supervising Civil Engineer. Jules testified that in 2009, the city had carried out a resurfacing project that included Hawthorne Boulevard. She explained that the project relied on federal funding, and that the city was required to submit plans signed by the city to secure that funding. At the time of her deposition, Jules had only an unsigned copy of the 2009 plans before her. Jules testified that the city would have had to approve the plans before construction began, but in response to questioning, she confirmed that the produced copy of the plans showed no approval by the city, as they

---

[6] The city also submitted minutes of city council meetings from July and August 2009. It asserted they showed that the city council additionally approved the 2009 plans. As discussed below, we conclude that Bell properly approved the plans for purposes of design immunity. We therefore need not discuss the minutes or decide their significance.

7

were unsigned.  Jules stated, however, that the striping in the plans matched the striping actually performed on the road.

As to the absence of a bicycle lane, Jules testified there had never been a bicycle lane on Hawthorne Boulevard between Dupre and Vallon.  She stated that in 2001, the city decided against including a bicycle lane there, explaining that the city wanted to retain on-street parking for the benefit of an adjacent park, and that a bicycle lane "would compromise" that parking.

Following her deposition, the city submitted a declaration by Jules.  In it, Jules stated that the city had now produced the signed copy of the plans, bearing Bell's June 2009 signature.  Jules noted that Bell was a licensed engineer during his tenure as Director of Public Works for the city.  She explained that he had signed the plans "on behalf of the City of Rancho Palos Verdes."  Regarding the site of the accident and the portion of Hathorne Boulevard preceding it, Jules opined that it met or exceeded all applicable government standards, and that the 2009 plans, including the absence of a bicycle lane, were reasonably approved.

### 3. *Rock Miller's Declaration*

The city also provided the declaration of Rock Miller, a traffic engineering expert.  Miller had reviewed the 2009 plans and opined that they were reasonable and in full compliance with applicable guidelines.  He described the

8

available collision data for the intersection of Hawthorne Boulevard and Vallon Drive, which showed that Jonathan's accident was the only serious collision there from 2006 to 2017. Miller opined that the intersection had an "extremely good" collision record, and that the road was safe when used with due care.

As to the inclusion of a bicycle lane, Miller reported that under applicable guidelines, bicycle lane markings should stop at least 100 feet before the beginning of a right-turn lane. He opined that a reasonable engineer would have approved the plans, including the absence of a bicycle lane at the relevant segment of the road.

### C. *Appellant's Opposition*

In opposing the city's motion for summary judgment, appellant argued, inter alia, that the city had failed to establish the elements of design immunity as a matter of law. Among other things, appellant contended the city had failed to establish that the 2009 plans had been approved by an authorized person because it had not shown that Bell had the authority to approve them. She further contended there was no substantial evidence showing that the plans were reasonable. Appellant additionally argued that the causation element of the design immunity was unmet, at

9

least as it related to her failure to warn theory, because the city's failure to warn was unrelated to any plan or design.[7]

With her opposition, appellant submitted a declaration by Edward Ruzak, a traffic engineering expert. Ruzak opined that the intersection constituted a dangerous condition due to the absence of a bicycle lane that would direct riders to the left of the right-turn lane. He testified that the relevant segment of Hawthorne Boulevard was heavily used by bicyclists, and that the risk of serious collisions was significant, given the road's design, including a steep downgrade that caused bicyclists to travel at high speeds. Ruzak faulted the city for failing to provide "warnings or positive guidance . . . regarding the proper and safe use of [the road]" in the absence of a bicycle lane.

Appellant also submitted the transcript of Rock Miller's deposition. There, Miller testified that bicycle lanes are rarely removed, and he would not recommend removal of a bicycle lane unless it was obvious that more important needs warranted that action.[8] In response to questioning about the procedure for removal of a bicycle lane, Miller

---

[7] Appellant also asserted a changed-conditions exception to design immunity, but she does not renew this argument on appeal.

[8] Appellant submitted evidence seeking to establish that there had previously been a bicycle lane on the relevant portion of Hawthorne Boulevard, but that the city had removed it, contrary to Jules's testimony that there had never been a bicycle lane there. Although the parties continue to debate this point on appeal, we need not address it to resolve the dispositive issues.

stated that he could not say what the standard procedure would be, but that in most places, the city staff would have the authority to determine how a street would be striped. When presented with additional questions about hypothetical bicycle lane removals, Miller replied that a city council would need to make that decision.

D. *The City's Reply*

In its reply, the city reasserted the positions it had advanced in its motion. As to appellant's failure to warn theory, the city further argued that the absence of a bicycle lane required no warning, and that in any case, signage on the road provided adequate warning.[9]

E. *The Trial Court's Ruling*

The trial court granted the city's motion for summary judgment, concluding the city had shown entitlement to design immunity as a matter of law. The court stated that

---

[9] The city also submitted additional evidence, including a supplemental declaration by Jules. Jules reiterated her prior testimony that there had never been a bicycle lane on the relevant portion of Hawthorne Boulevard, and addressed the difficult process that removing a bicycle lane would have required, including the need for city council approval. Citing this testimony, the city argued the lack of a "paper trail" concerning an alleged removal of a bicycle lane on Hawthorne Boulevard showed there had never been a bicycle lane there. However, both parties represent on appeal that the trial court later excluded the city's newly submitted evidence, including Jules's supplemental declaration.

11

the allegations in appellant's complaint established a causal relationship between a design or plan and the accident. It further concluded the city had shown that Bell had approved the 2009 plans and had the authority to do so. Finally, the court found substantial evidence supported the reasonableness of those plans.

The trial court did not address appellant's failure to warn theory in granting the city's motion.[10] Because it granted the city's motion based on design immunity, it did not consider the city's alternative contentions: that the road was not dangerous and that Jonathan had not used the property with due care.[11] Appellant timely appealed, arguing that design immunity does not protect the challenged absence of a bicycle lane and, alternatively, that her failure to warn theory should survive the application of design immunity.

---

[10] The court briefly mentioned appellant's allegation that the city had failed to warn of a dangerous condition only in rejecting her assertion that the changed-conditions exception to design immunity applied.

[11] Because we conclude the city was entitled to design immunity from liability for the absence of a bicycle lane, we likewise do not consider these additional contentions. On remand, the trial court may consider these issues as necessary to assess appellant's failure to warn theory.

## DISCUSSION

### A. *Summary Judgment Principles*

"Summary judgment is appropriate only where 'no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) The party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) Where a defendant moves for summary judgment based on an affirmative defense, the defendant must show that undisputed facts support each element of the affirmative defense. (*Anderson v. Metalclad Insulation Corp.* (1999) 72 Cal.App.4th 284, 289.)

The party seeking summary judgment bears an initial burden of production to make a prima facie showing that no triable issue of material fact exists. (*Aguilar, supra*, 25 Cal.4th at 845.) If that party carries this burden of production, the opposing party then has the burden of production to make a prima facie showing that a triable issue of material fact exists. (*Ibid.*)

"""We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained."""" (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.) We liberally construe the evidence in support of the party opposing summary judgment and

13

resolve evidentiary doubts in its favor. (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347 (*Hampton*).)

B. *Design Immunity for Dangerous Condition of Public Property*

Section 835 provides that a public entity may be liable under certain circumstances for injuries caused by a dangerous condition of its property. (§ 835.) "However, under section 830.6, the public entity may escape such liability by raising the affirmative defense of 'design immunity.'" (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 69 (*Cornette*).) "The rationale for design immunity is to prevent a jury from second-guessing the decision of a public entity by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan or design." (*Ibid.*)

A public entity raising this defense must establish three elements: (1) a causal relationship between a plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design. (*Cornette, supra*, 26 Cal.4th at 69.) The first two elements -- causation and discretionary approval -- involve factual questions to be resolved by a jury, unless the facts are undisputed. (*Alvis v. County of Ventura* (2009) 178 Cal.App.4th 536, 550.) The third element -- the existence of substantial evidence supporting the reasonableness of the

plan or design -- is a legal matter for the court to decide. (*Cornette*, *supra*, at 66.) Appellant claims the city has failed to establish any of the elements of design immunity. We address each element in turn.

### 1. *Causal Relationship*

Design immunity applies only to injuries "caused by the plan or design of a construction of, or an improvement to, public property . . . ." (§ 830.6.) In other words, this defense does not immunize negligence unrelated to a design or plan. (See *ibid*.) Appellant contends the city failed to establish that the absence of a bicycle lane was the result of a plan or design, rather than inadvertence. She claims the city therefore failed to show that a plan or design caused the accident. As to the 2009 plans, appellant asserts they were entirely "silent" about the inclusion or exclusion of bicycle lanes. She is mistaken.

The 2009 plans directed the inclusion of "'BIKE LANE' & ARROW" markings, the striping of continuous lines consistent with bicycle lane striping to the left of those markings, and bicycle lane signs on multiple segments of Hawthorne Boulevard. They included no such markings or signs, however, on the segment between Vallon Drive and Dupre Drive. Insisting that the plans were silent on the subject of bicycle lanes, appellant fails to address this disparity and offers no argument that it was insufficient to establish a causal relationship between the plans and the omission of a bicycle lane at the site of the accident -- an

15

omission she alleges caused the accident.[12]  We therefore conclude the city has carried its burden as to the first element of design immunity.

### 2. *Discretionary Approval*

To prove discretionary approval, a public entity "must show that the design was approved 'in advance' of the construction 'by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval . . . .'" (*Martinez v. County of Ventura* (2014) 225 Cal.App.4th 364, 369 (*Martinez*), quoting § 830.6.)  The entity must prove that the person or entity

---

[12]    For the first time at oral argument, appellant asserted that for a certain segment of a road included in the project, the plans depicted a bicycle lane sign but no "'BIKE LANE' & ARROW" markings.  Appellant argued this showed that the absence of these markings in the plans for the relevant segment of Hawthorne Boulevard did not establish the intended absence of a bicycle lane there.  Initially, appellant has forfeited this contention by failing to raise it in her briefs.  (See *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9 ["We do not consider arguments that are raised for the first time at oral argument"].)  Moreover, she is mistaken.  The plans show that the segment appellant references, most of which was not to be resurfaced, included existing bicycle lane markings and striping, in addition to bicycle lane signs.  As noted, the plans showed no existing bicycle lane elements for the relevant portion of Hawthorne Boulevard, which was to be fully resurfaced.

who made the relevant decision is vested with the authority to make it.  (*Martinez, supra,* at 373.)

A public entity may prove the decisionmaker's authority to approve a plan or design by pointing to governing law.  (See, e.g., *Thomson v. City of Glendale* (1976) 61 Cal.App.3d 378, 384 [examining city's charter and municipal code in determining that employee had authority to approve construction plans].)  Alternatively, the entity may provide testimony by the decisionmaker or another person familiar with the entity's approval process.  (See, e.g., *Gonzales v. City of Atwater* (2016) 6 Cal.App.5th 929, 936, 947 (*Gonzales*) [discretionary approval shown as matter of law where city engineer testified he had authority to decide on relevant component of plans]; *Dobbs v. City of Los Angeles* (2019) 41 Cal.App.5th 159, 161 (*Dobbs*) ["Testimony about the entity's discretionary approval custom and practice can be proper even though the witness was not personally involved in the approval process"; declaration by person with 14 years of experience in agency was "adequate"].)  In addition to such testimony, the approved plans themselves may constitute evidence of the necessary discretionary approval.  (See *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1263 (*Laabs*) [city established discretionary approval where city engineer declared another city engineer had approved plans, and where plans themselves showed they had been signed and approved by second engineer in his official capacity], citing Evid. Code, § 1453 ["A signature is presumed to be genuine and

17

authorized if it purports to be the signature, affixed in his official capacity, of: [¶] . . . [¶] (b) A public employee of any public entity in the United States"]; *Alvarez v. State of California* (1999) 79 Cal.App.4th 720, 728-729, 733, abrogated on another ground by *Cornette*, *supra*, 26 Cal.4th 63 [relying on Evid. Code, § 1453 to conclude signed plans themselves provided evidence of necessary discretionary approval; plans showed design was approved by officials whose stated capacities indicated their discretionary approval authority].)

The city's evidence was sufficient to make a prima facie showing that the 2009 plans had received discretionary approval as a matter of law. A private engineering firm prepared the plans and submitted them to the city for approval. It is undisputed that Jim Bell, the city's Director of Public Works, signed the plans, and the plans themselves indicate that Bell "APPROVED" them in his official capacity. At the deposition of Nicole Jules, formerly the Deputy Director of Public Works and Supervising Civil Engineer for the city, Jules had before her only an unsigned copy of the plans. She then testified that the city would have had to approve the plans before construction began, but confirmed that the produced copy of the plans bore no signature constituting approval by the city. However, following Jules's deposition, the city located the signed plans. Jules testified in her declaration that Bell was a licensed engineer during his tenure as Director of Public Works, and explained that Bell had signed the plans "on behalf of the City of Rancho

18

Palos Verdes." In other words, according to Jules, Bell's signature constituted city approval for the plans, which she had agreed was absent when reviewing the unsigned copy of the plans. As a former senior employee at the city's Department of Public Works, Jules was competent to testify about the city's approval process and Bell's authority. (See, e.g., *Dobbs*, *supra*, 41 Cal.App.5th at 161.) The plans showing Bell's approval in his capacity as Director of Public Works, together with Jules's unrefuted testimony about the significance of his signature, satisfied the city's burden of production as to the discretionary approval element.[13] (See *Gonzales*, *supra*, 6 Cal.App.5th at 936, 947; *Laabs*, *supra*, 163 Cal.App.4th at 1263.)

Appellant faults Jules's declaration for failing to specify the timing of the plans' approval and the construction of the project. Yet the plans themselves show they were approved in June 2009, and Jules repeats this information in her declaration. And at Jules's deposition, she testified that the resurfacing project was done in 2009, that it was performed using federal funding, and that plans signed by the city were required to secure that funding. This

---

[13] Because we conclude that Bell's approval of the plans was sufficient, we need not address the city council's approval of the 2009 plans. We note, however, that in addition to the city council minutes of July and August, the city presented minutes of September 2009, showing the council's approval of the 2009 plans. The court excluded the September minutes as they were submitted with the city's reply.

19

evidence sufficed to show the plans received discretionary approval before the construction.[14]

Appellant cites *Martinez, supra*, 225 Cal.App.4th 364 and *Castro v. City of Thousand Oaks* (2015) 239 Cal.App.4th 1451 (*Castro*) in support of her contention that the city's evidence was insufficient. Each of these cases is distinguishable.

In *Martinez*, a statute vested discretionary authority to approve the relevant design -- a drain system -- in the county road commissioner, who had not approved the design. (*Martinez, supra*, 225 Cal.App.4th at 371.) Instead, the county road maintenance engineer allegedly approved the design, but there was no evidence the road commissioner had delegated his authority to that person or was even empowered to do so. (*Id.* at 372.) And the alleged decisionmaker's testimony that he had approved the design was "equivocal at best," stating only that he "'was involved probably with the approval of the installation, yes, sir.'" (*Ibid.*) Unlike in *Martinez*, there is no evidence that authority to approve the relevant plans here was vested in

---

[14] Appellant additionally faults the city for failing to establish the approval of "'as built'" plans, meaning plans showing the condition of the road after completion of the project. There is no authority for this alleged requirement. *Hampton, supra,* 62 Cal.4th at 346, 358, cited by appellant, involved as-built plans, but in no way suggests they were required. In any event, Jules testified at her deposition that the 2009 plans matched the actual condition of the road.

20

anyone other than Bell, and both Jules's declaration and the plans themselves show that Bell approved them.

In *Castro*, the alleged dangerous condition -- a pedestrian warning beacon -- was an "'add-on[],'" not part of any plan or design by the defendant city. (*Castro, supra*, 239 Cal.App.4th at 1453-1454.) The court concluded the municipal code did not authorize the decisionmaker to approve a design for the add-on, and rejected declarations by current and former city employees that the decisionmaker was authorized to approve a design for it. (*Id.* at 1456.) The court explained that design immunity requires "an actual plan or design, i.e., something other than an oral 'after the fact' statement that 'I had authority and I approved my own safety idea.'" (*Id.* at 1457.) But unlike the city in *Castro*, the city of Rancho Palos Verdes has furnished actual plans containing the disputed feature (the 2009 plans), accompanied by the decisionmaker's contemporaneous approval, rather than "an oral 'after the fact' statement."

Appellant offers no meaningful evidence to counter the city's showing. She points to the deposition of Rock Miller, the city's traffic engineering expert.[15] In his deposition, Miller alternately stated in response to hypotheticals that a city's staff would have the authority to decide whether to include a bicycle lane or that a city's council would need to make that decision. Miller did not testify about the

---

[15] Appellant inaccurately describes Miller as "an engineer with the City."

21

procedures followed by the city of Rancho Palos Verdes, and nothing in the record suggests he was even competent to testify about that city's procedures.  In short, the trial court did not err in finding the city's evidence established Bell's discretionary approval of the 2009 plans as a matter of law.[16]

### 3. *Reasonableness*

Under the third element of design immunity, the court must determine if "there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design . . . or (b) a reasonable legislative body or other body or employee could have approved the plan or design . . . ." (§ 830.6.)  The evidence need not be undisputed:  the statute provides immunity when there is substantial evidence supporting the decision, even if it is contradicted.  (*Gonzales*, *supra*, 6 Cal.App.5th at 946.)  "The public entity must be granted immunity as long as reasonable minds can differ concerning whether a design should have been approved; '"[t]he statute does not require that property be perfectly designed, only that it be given a

---

[16]    Appellant attempts to rely on the city's reply below, which in turn relied on Jules's supplemental declaration to state that the removal of a bicycle lane would have required city council approval.  This argument, however, rests on evidence that was excluded and thus is not properly before us.  Appellant makes no attempt to show that the city's statement below constituted a judicial admission or warrants application of judicial estoppel.  Finally, we observe that appellant made no attempt to raise any contention in this regard before the trial court.

22

design which is reasonable under the circumstances.”’”
(*Ibid.*)

"Generally, a civil engineer's opinion regarding reasonableness is substantial evidence sufficient to satisfy this element.  [Citation.]  Approval of the plan by competent professionals can, in and of itself, constitute substantial evidence of reasonableness.  [Citation.]  That a plaintiff's expert may disagree does not create a triable issue of fact." (*Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 941 (*Grenier*).)

The city has provided substantial evidence supporting the 2009 plans' reasonableness.  Miller, the city's traffic engineering expert, opined that the plans were reasonable and in full compliance with applicable guidelines.  He explained that the intersection of Hawthorne Boulevard and Vallon Drive had an "extremely good" collision record, and opined that the road was safe when used with due care. According to Miller, applicable guidelines provided that bicycle lane markings should stop at least 100 feet before the beginning of a right-turn lane.  This suggested that the guidelines did not support the inclusion of a bicycle lane at the intersection itself.  Miller opined that a reasonable engineer would have approved the plans, including the absence of a bicycle lane at the relevant segment of the road.

Jules, a former senior engineer for the city, testified similarly in her declaration.  She opined that the relevant segment of Hawthorne Boulevard met or exceeded all applicable government standards, and that the plans for the

23

road, including the absence of a bicycle lane, were reasonably approved. At her deposition, Jules relayed that the city had previously decided against including a bicycle lane on the relevant stretch of Hawthorne Boulevard because the city wanted to retain on-street parking for the adjacent park, and this was incompatible with the inclusion of a bicycle lane. Miller's and Jules's expert opinions amply supported the reasonableness of the 2009 plans. (See *Grenier, supra*, 57 Cal.App.4th at 941; *Ramirez v. City of Redondo Beach* (1987) 192 Cal.App.3d 515, 525 [expert witness's testimony that roadway was not dangerous satisfied reasonableness element, regardless of conflicting expert evidence].)

Appellant argues the omission of a bicycle lane was nevertheless wholly unreasonable: she asserts that an intersection on a road heavily used by bicyclists necessarily presents a threat, and contends that the city could easily have included a bicycle lane just at the intersection, thereby preserving the availability of on-street parking before the intersection. Appellant's argument amounts to no more than disagreement with the city's experts, who opined that the design of the intersection was reasonable even without a bicycle lane. This disagreement, supported as it may be by appellant's own experts, does not defeat the city's evidence. (See *Gonzales, supra*, 6 Cal.App.5th at 946.) Moreover, appellant cites no evidence that including a bicycle lane just at the intersection would have been feasible or safe. Finally, even assuming appellant's proposed design would have been

preferable to that of the 2009 plans, this would show only that the 2009 plans were not perfect; it would not negate the substantial evidence that those plans were reasonable. (See *ibid.*)

Appellant claims that the lack of evidence of any deliberative process or analysis by the city concerning a bicycle lane before approving the 2009 plans defeats any claim of reasonableness. We disagree. It is true that the deliberative process may be relevant to the reasonableness inquiry. (See *Hampton, supra,* 62 Cal.4th at 343 [rejecting contention that discretionary approval element involves whether decisionmaker was aware of design standards; "the adequacy of the deliberative process . . . may be considered in connection with the court's determination whether there is substantial evidence that the design was reasonable"]; *Rodriguez v. Department of Transportation* (2018) 21 Cal.App.5th 947, 960 ["In view of *Hampton,* whether an omitted design feature is a 'conscious design choice' is relevant, not to whether discretionary approval element is satisfied, but to whether the design was reasonable"].) For instance, evidence that an approving engineer never considered the challenged design feature would cut against the inference that mere approval of the design by a competent professional establishes its reasonableness. (See *Grenier, supra,* 57 Cal.App.4th at 941 [approval by competent professional can itself show reasonableness].) But neither the statute nor any precedent suggests that

25

affirmative evidence of a deliberative process focused on the disputed feature is a prerequisite to reasonableness.

By its terms, section 830.6 does not concern whether the actual decisionmakers reasonably adopted the challenged design and does not ask whether they had substantial evidence of reasonableness before them; instead, the statute directs a court to determine if "there *is* any substantial evidence," i.e. evidence before the court, on which "*a reasonable* [*decisionmaker*] *could have*" made the same decision.  (*Ibid.*, italics added.)  The statute thus does not require evidence of the actual decisionmakers' considerations.

Additionally, while appellant cites *Hampton* in support of her argument, that case undercuts her position.  There, in rejecting the contention that the discretionary approval element requires a decisionmaker to be aware of applicable design standards, our Supreme Court noted the practical problems a contrary approach would create:  "Although objective proof of the fact of approval by an employee with authority to approve the plan may be readily available, evidence of the standards actually considered by the decision makers, as well as the reasoning and motivation of those employees, will be much more scarce with the passage of time.  Plaintiffs' interpretation could produce the anomaly of different immunity outcomes for identical designs depending simply upon the record-keeping ability of the public entities involved, or the availability of employees who are able to remember the decisionmaking process of the persons

26

involved -- a process that may have occurred long before the lawsuit." (*Hampton, supra,* 62 Cal.4th at 351.) Appellant's approach -- requiring affirmative evidence of an adequate deliberative process as part of the reasonableness inquiry -- would create the very same problems our Supreme Court warned about in *Hampton.* In short, the city was not required to show that it expressly considered including a bicycle lane on the relevant stretch of Hawthorne Boulevard. The city's evidence that the 2009 plans were reasonable satisfied the third element of design immunity, and it was therefore entitled to this defense.

C. *Failure to Warn*

In addition to her theory that the city created a dangerous condition at the site of the accident, appellant alleged in her complaint that the city negligently failed to warn of the dangerous condition. She further asserted that theory in opposing the city's motion for summary judgment. As appellant notes, the trial court did not address her failure to warn theory in granting the city's motion.

On appeal, appellant argues that even if design immunity protects the city from liability for the omission of a bicycle lane, the city may still be liable for failing to warn of that dangerous condition. She claims that the absence of a bicycle lane at the area of the accident constituted a

27

concealed trap for which a warning was necessary.[17]  We agree that design immunity does not, as a matter of law, preclude liability under a theory of failure to warn of a dangerous condition.

In *Cameron v. State of California* (1972) 7 Cal.3d 318, 327 (*Cameron*), our Supreme Court held that a public entity may be held liable for failure to warn of a concealed dangerous condition even if that dangerous condition was covered by design immunity.  There, the plaintiffs were injured in a car accident when the driver lost control negotiating an "S" curve constructed with inconsistent superelevation.  (*Id.* at 322-323.)  At trial, the state obtained a judgment of nonsuit based on design immunity.  (*Id.* at 322.)  Our Supreme Court reversed, concluding that design immunity was inapplicable because the state had failed to prove that the inconsistent superelevation was part of a pre-approved design for the road.  (*Id.* at 326.)

To provide guidance to the trial court on remand, the *Cameron* court considered a second contention by the plaintiffs.  (*Cameron, supra*, 7 Cal.3d at 326-327.)  The plaintiffs alleged that the state was negligent in failing to warn of the improper superelevation, that this negligence was "a concurrent cause of their injuries," and that the failure to warn "was not the result of any design or plan which would confer immunity under section 830.6 . . . ."  (*Id.*

---

[17]    It is unclear precisely what kind of warning appellant claims the city should have provided.

at 327.) They contended that even if design immunity were eventually found to be applicable as to the uneven superelevation, it should not immunize the state for its negligence in failing to warn of that dangerous condition. (*Id.* at 326-327.) Our Supreme Court agreed: "where the state is immune from liability for injuries caused by a dangerous condition of its property because the dangerous condition was created as a result of a plan or design which conferred immunity under section 830.6, the state may nevertheless be liable for failure to warn of this dangerous condition where the failure to warn is negligent and is an independent, separate, concurring cause of the accident." (*Id.* at 329.)

The city cites *Weinstein v. Department of Transportation* (2006) 139 Cal.App.4th 52 (*Weinstein*) for the proposition that that an entity entitled to design immunity for a dangerous condition of its property may not be held liable for failing to warn of that dangerous condition. The *Weinstein* court found *Cameron* distinguishable, stating that *Cameron* "involved the failure to warn of a hidden dangerous condition that was not part of the approved design of the highway," whereas the plaintiffs in *Weinstein* claimed the defendant "was obligated to warn of conditions that *were* part of the approved design." (*Weinstein, supra,* at 61.) This analysis is mistaken. It is true that *Cameron*, which stemmed from a judgment of nonsuit, concluded the state had failed to show the dangerous condition was part of the approved design. (*Cameron, supra*, 7 Cal.3d at 322, 326.)

29

But, foreseeing the possibility that the state would succeed in establishing design immunity on remand, our Supreme Court proceeded to consider the plaintiffs' failure to warn theory, in order to guide the trial court. (*Id.* at 326-327.) As described, the court concluded that design immunity for a dangerous condition would not necessarily shield the state from liability for a failure to warn of the same dangerous condition. (*Id.* at 329.)

Thus, under *Cameron*, the city's entitlement to design immunity for its failure to include a bicycle lane at the site of Jonathan's accident does not, as a matter of law, necessarily preclude its liability under a theory of failure to warn.[18] Because it appears the trial court did not consider appellant's failure to warn theory, we deem it advisable to allow the trial court to consider the failure to warn theory in the first instance.

---

[18] Nothing in *Cameron*, however, suggests that design immunity cannot shield a failure to warn that is itself caused by a qualifying design under section 830.6. Indeed, as noted, the plaintiffs there alleged that the failure to warn "was not the result of any design or plan which would confer immunity under section 830.6 . . . ." (*Cameron, supra*, 7 Cal.3d at 327.) Thus, appellant may not assert that the absence of a bicycle lane itself *constituted* the failure to warn. As discussed above, design immunity shields the city's decision not to include a bicycle lane at the site of the accident.

**DISPOSITION**

The judgment is affirmed in part and vacated in part, and the matter is remanded to the trial court to consider whether summary judgment is appropriate as to appellant's failure to warn theory. The court may, in its discretion, allow additional briefing and evidence on any issue related to the viability of this theory. Each side shall bear its own costs on appeal.

**CERTIFIED FOR PUBLICATION**

MANELLA, P. J.

We concur:

WILLHITE, J.

COLLINS, J.

31